**POLYLOK CORPORATION, Plaintiff,**

v.

**VALLEY FORGE FABRICS INC., Defendant.**

**No. 83 Civ. 4054.**

United States District Court, S.D. New York.

June 21, 1983.

Sutton & Magidoff, New York City, for plaintiff; Paul J. Sutton, Barry G. Magidoff, Anthony Amaral, Jr., New York City, of counsel.

Stein, Davidoff, Malito & Teitler, New York City, for defendant; Richard C. Stein, Stanley A. Teitler, Deborah A. Paquette, New York City, of counsel.

## OPINION FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDWARD WEINFELD, District Judge.

This is a trademark infringement and unfair competition case in which plaintiff seeks a preliminary injunction. Since the opposing affidavits submitted on the motion raised disputed fact issues, the Court conducted a hearing at which each side presented oral testimony and documentary evidence.[1] Based upon the affidavits, the testimony of the witnesses called by the parties, the Court's appraisal of their demeanor and the exhibits admitted in evidence, the Court concludes that plaintiff is entitled to a preliminary injunction. The Court finds that there is a probability of success by plaintiff upon the trial. The close similarity of the names at issue, as described hereafter, by itself suggests likelihood of confusion. Accordingly, this "establishes the requisite likelihood of success on the merits as well as risk of irreparable harm."[2] The need for preliminary injunctive relief is underscored by the fact that there is an ongoing trade show at which both the products of plaintiff and defendant will be displayed to the trade at large.

Plaintiff, Polylok Corporation, a manufacturer of fabrics, is the owner of the trademark "Poly-Lok" that is placed on material used for making draperies, window coverings, casements and wall hangings suitable for residential and commercial use. The mark was registered in the United States Patent Office on March 14, 1967, which plaintiff acquired by assignment. It is also the owner of "Polylok" with an arrow design running through the "O" which was registered in the United States Patent Office on July 21, 1981 and also used for fabrics and combinations thereof. On the same day plaintiff registered the trademark Poly-Lok Barrier Lok, also with arrow designs, used principally on fabrics with added

---

1. *Visual Sciences, Inc. v. Integrated Communications Inc.*, 660 F.2d 56, 58 (2d Cir.1981). *See also SEC v. Frank*, 388 F.2d 486 (2d Cir.1968).

2. *Standard & Poor's Corp. v. Commodity Exchange, Inc.*, 683 F.2d 704, 708 (2d Cir.1982) (citations omitted). *See also Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir.1979) ("In a trademark infringement case ... a substantial likelihood of confusion constitutes, in and of itself, irreparable injury sufficient to satisfy the requirements of Rule 65(b)(1).") (citations omitted).

insulation. In addition, plaintiff has pending an application for registration of the mark Barrier-Lok Plus, which mark it has used since September 1, 1981. It has applied these trademarks to its products and has placed the symbol R adjacent to the name where used. The corporate title "Polylok Corporation" has been displayed on all invoices, bills of lading, stationery and other documents.

Plaintiff sells its manufactured fabrics principally to converters, jobbers and other large scale purchasers ("wholesalers").[3] Plaintiff, upon each shipment from its manufacturing mill, attaches hang tags displaying the mark with an R to the rolls of fabric. The shipping cartons within which the fabrics are contained are also stamped with the mark and registration notice. A wholesaler, at times, upon making its purchases, requests plaintiff to store the merchandise subject to a future order for shipment to one of its customers and when an order is placed by the wholesaler for shipment to its customer the packing cartons contain one of the plaintiff's trademarks, "Poly-Lok," "Polylok" with the arrow design, or "Polylok Barrier-Lok," and to the material within the carton are attached hang tags displaying the mark. The mark is also on inserts in its sample books containing swatches of finished fabrics.

The converters and jobbers sell in bulk quantities to the professional trade. These include designers and other commercial clients, who prepare and provide the material for use in offices, hotels, schools and public buildings. Plaintiff also makes direct sales to chain stores such as Sears Roebuck, Montgomery Ward and others. The material in these instances is generally sold for use in the home furnishing of drapes rather than for large institutional use. Plaintiff also sells its products on a mail order basis or through a finishing company. Whatever the nature of plaintiff's sales, whether to wholesalers or to those who sell directly to the ultimate consumer, all products bear one of the plaintiff's mark.

From 1968 to date plaintiff's sales of fabric bearing its mark have approximated $360,000,000 and its annual sales amount to more than $10,000,000. It has since that date expended approximately $1,230,000 for advertising, promotion and public relations activities in publicizing the trademark before the trade and ultimate consumer. In recent years its average annual expenditure for advertising is $150,000. Its products bearing its mark have received notice and favorable comment in trade publications and in the public news media, including the New York Times, Business Week, and the Women's Wear Daily. Through the years trade journalists, in interviews with plaintiff's president, have noted references to the trademarks.

The defendant, Valley Forge Fabrics, Inc., is a jobber. In early 1982, more than fifteen years after plaintiff acquired its right to the registered mark "Poly-Lok," the defendant issued to the commercial trade a sample book bearing the name "Polylox Plus" prominently displayed on the cover. It contains various swatches or samples of fabric to be used for draperies, casement window coverings and the like. A customer may order from defendant by designating one or more swatch styles contained in the sample books. The defendant has distributed some 3500 books bearing that name to the trade. Among the samples contained in the collection is a fabric designated "Polylox." The gross sales of fabrics from this collection total $120,000. Plaintiff learned of the distribution of the sample book about six weeks ago and promptly commenced this action to obtain injunctive relief.

It is beyond dispute that "Polylox" by itself sounds identical to the plural or possessive form of plaintiff's mark "Poly-Lok." Neither can it be seriously disputed that "Polylox Plus" displayed on the cover of the sample book or "Polylox" used on the sample in the book sounds and looks like plaintiff's registered mark "Poly-Lok" and its related marks. This more than satisfies the

---

**3.** A converter buys goods from the manufacturing mill, dyes the goods and then sells to jobbers who in turn sell to workshops, where the fabric is cut into drapes, usually on orders from interior decorators, contractors, architects and the like.

"idem sonans" rule.[4] The prospective purchaser whose patronage has been solicited through defendant's swatch book, upon observing "Polylox Plus" across the front cover, its most prominent page, could readily be confused by its marked similarity to plaintiff's registered mark "Poly-Lok." The touchstone of trademark infringement under the Lanham Act,[5] upon which plaintiff seeks relief, is " 'likelihood of confusion'; whether a substantial number of ordinarily prudent purchasers are likely to be misled or confused as to the source of the different products." [6] There can be little doubt that defendant's Polylox Plus is confusingly similar to plaintiff's mark Poly-Lok.

The defendant seeks to overcome the force of this compelling situation upon a claim that "poly" is a common term in the textile industry, denoting the use of polyester in the fabric and that "lok" or its variations denote to those in the industry a technique to insure stability of the material against its sagging after it has been put in place. The argument may have some force as to "poly," but even this is doubtful. Plaintiff points out that its accepted meaning is "many" and so understood by the trade.[7] In any event, the contention fails as to "lok." The evidence does not support the claim. In effect, defendant, in applying the ascending criteria of the four categories with respect to trademark protection seeks to classify plaintiff's mark as generic.[8] To the contrary, plaintiff's mark more properly

comes within the category between suggestive and arbitrary or fanciful, more so the latter. The term "Poly-Lok" is not generic nor is it descriptive. While it may be suggestive to those expert in the textile trade, such as the wholesalers, to the ultimate non-expert consumer it can more readily be classified as arbitrary. "[A] term may have one meaning to one group of users and a different one to others, . . . the same term may be put to different uses with respect to a single product." [9]

The defendant also urges that it is not in competition with the plaintiff but only with plaintiff's purchasers, the converters, and that such purchasers do not apply plaintiff's mark to its goods. Even assuming that plaintiff is not in direct competition with the defendant, plaintiff is not deprived of its right to protect the mark, nor does it license the defendant to infringe. "A registered trade-mark is safeguarded against simulation 'not only on competing goods, but on goods so related in the market to those on which the trade-mark is used that the good or ill repute of the one type of goods is likely to be visited upon the other.' " [10] So, too, that, as defendant alleges, converters remove plaintiff's tag after they have received the shipment does not deprive plaintiff of its trademark protection against all violators.[11]

The defendant makes a further contention that the registered mark of "Poly-Lok" contains a hyphen and that plaintiff has omitted the hyphen in using the mark. Its

4. *Stix Products, Inc. v. United Merchants & Mfrs., Inc.,* 295 F.Supp. 479, 486 (S.D.N.Y. 1968).

5. 15 U.S.C. §§ 1114, 1125. Plaintiff has also brought claims under §§ 368–b and d of the New York General Business Law.

6. *Mushroom Makers v. R.G. Barry Corp.,* 441 F.Supp. 1220, 1225 (S.D.N.Y.1977), *aff'd,* 580 F.2d 44 (2d Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).

7. The American College Dictionary (1969) describes the term "poly" as follows: a word element or prefix, meaning "much," "many," first occurring in words from the Greek (as *polyandross*) but now used freely as a general formative, esp. in scientific or technical words.

*Cf. mono* -. [t. Gk., comb. form of *polys* much, many; akin to L *plenum* full, and to FULL"].

8. *See Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976).

9. *Id.* at 9.

10. *Chandon Champagne Corp. v. San Marino Wine Corp.,* 335 F.2d 531, 534 (2d Cir.1964) (*quoting* Restatement (Second) of Torts § 731, comment a (Tent. Draft No. 8, 1963)).

11. *Cf.* 15 U.S.C. § 1127 (mark not abandoned save where, *inter alia,* a "course of conduct *of the registrant* . . . causes the mark to lose significance as an indication of origin") (emphasis supplied). *See also Saratoga Vichy Spring Co. v. Lehman,* 625 F.2d 1037, 1044 (2d Cir.1980) (abandonment must be "strictly proved").

omission is of no significance; it is a distinction without a difference.[12] Finally, there is no adequate explanation upon this record of why of all combinations available through the use of the English language the defendant selected a mark that sounds and looks like plaintiff's. The purported explanation by the defendant's chief executive officer rang hollow and was far from persuasive. "[T]he common law of trademarks is but a part of the broader law of unfair competition" and the same test is applied with respect to each claim.[13]

The Court holds that on this record plaintiff has established likelihood of confusion and so it is entitled to injunctive relief pending a trial. Plaintiff is required, pursuant to Fed.R.Civ.P. 65(c), to post a cash or surety company bond in the sum of $50,000.

Submit order on two days' notice enjoining the defendant from using "Polylox," "Polylox Plus" or any related term similar thereto on any of its advertising, sample books or products.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.

12. *Stix Products, Inc. v. United Merchants & Mfrs., Inc.,* 295 F.Supp. 479, 486 & n. 19 (S.D. N.Y.1968).

13. *Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 413, 36 S.Ct. 357, 360, 60 L.Ed. 713 (1916). *See also Mushroom Makers, Inc. v. R.G. Barry Corp.,* 441 F.Supp. 1220, 1225 (S.D. N.Y.1977), *aff'd,* 580 F.2d 44 (2d Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).