**SONORA COSMETICS, INC., Plaintiff,**

v.

**L'OREAL S.A. and Cosmair, Inc., Defendants.**

**No. 86 Civ. 2046 (EW).**

United States District Court, S.D. New York.

April 10, 1986.

Abelman Frayne Rezac & Schwab (Jeffrey A. Schwab, Peter J. Lynfield, Eliza-beth M. Barnhard, of counsel.), New York City, for plaintiff.

Brumbaugh, Graves, Donohue & Raymond (Russell H. Falconer, Doreen J. Leavens, of counsel.), New York City, for defendants.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff Sonora Cosmetics ("Sonora"), a Canadian manufacturer of cosmetic products, brings this action for trademark infringement and related claims against defendants L'Oreal S.A. ("L'Oreal"), a French cosmetics manufacturer, and Cosmair, Inc. ("Cosmair"), an American corporation licensed by L'Oreal to sell L'Oreal's products in the United States. Plaintiff claims that defendants' line of eye makeup bearing the name LES BIJOUX infringes plaintiff's registered U.S. trademark, BIJOU, under which name plaintiff sells eyeshadow and related cosmetic products. Plaintiff moves for a preliminary injunction; defendants oppose the request for this relief, and move to stay proceedings in this Court pending the outcome of a challenge by defendants to the registration of plaintiff's trademark in the Trademark Trial and Appeals Board of the United States Patent and Trademark Office. In addition to its consideration of the briefs and affidavits submitted by the parties, the Court conducted an evidentiary hearing on plaintiff's motion for a preliminary injunction.

Plaintiff Sonora was formed in 1970, and has been manufacturing cosmetic products for distribution in the United States for the past twelve years. Although initially its sole channel of distribution for its products in the United States was solicitation through direct mail merchandising catalogs, it has in the past three to four years sold its products through major American retailing chains, including Sears, Montgomery Ward's, and J.C. Penney's. Plaintiff's president testified that in 1985 its cosmetic products sold under the BIJOU mark were available in approximately 2,500 retail stores throughout the United States, and

that plaintiff's receipts from sales of its BIJOU products totaled over $1 million.

The record shows that plaintiff made its first use of the BIJOU mark in interstate or foreign commerce in May 1980. On May 24, 1982, plaintiff filed an application for registration of its mark with the United States Patent and Trademark Office; the application was granted on September 11, 1984, and registration number 1,293,687 was issued to plaintiff for the mark BIJOU in connection with the sale of "COLOUR FACE MAKEUP—NAMELY, EYE SHADOW, BLUSHER, MASCARA AND LIPSTICK." [1]

In October 1983, after plaintiff applied for registration of its mark and before the registration issued, the Lancome Division of defendant Cosmair, which manufactures and distributes products under license from Lancome, S.A., a French corporation not a party to this action, began marketing a "seasonal collection" of cosmetic products, including eye shadow, lipstick, rouge, etc., under the name LES BIJOUX. Advertising material from this promotion discloses that the name LES BIJOUX did not appear on the packaging of the individual cosmetic products sold by Cosmair, but did appear on the in-store displays and other materials promoting these products. [2]

In October 1984, after the issuance of plaintiff's registration for the mark BIJOU in connection with eyeshadow, defendant Cosmair's Lancome Division launched a second "seasonal collection" of cosmetics for the 1984 Christmas season. This collection of products included a single shade of eye shadow called "Le Bijou." Defendants' employees testified that this single shade of eyeshadow is currently in defendant's product line.

On two subsequent occasions, the first in October 1984 and the second in March 1986, the Lancome Division of Cosmair promoted the sale of its perfume product bearing the trademark MAGIE NOIRE through gift promotions in which purchasers of defendant's perfume could purchase other merchandise as part of a "gift set." The first gift set, which was distributed for the holiday retailing season in 1984, bore the name "Le Sac Bijou," and contained, in addition to a quantity of MAGIE NOIRE perfume, a spangled evening bag. The second promotion, which is presently in effect, offers purchasers of MAGIE NOIRE the opportunity to purchase a "jewelry roll," a cloth carrying-case for jewelry; this promotion is publicized under the name "Le Cache Bijou." These "gift sets" include perfume containers bearing the defendants' trademark MAGIE NOIRE; the outside packaging of the gift set, but not the evening bag or the jewelry roll, bear the designation which includes the word "bijou."

In December 1985, the L'Oreal Division of defendant Cosmair, which distributes products under license from defendant L'Oreal S.A., began advertising a new line of eyeshadow products, in packaging consisting of faceted plastic boxes loosely resembling gemstones, marked LES BIJOUX. In preparation for the marketing of this product line, L'Oreal S.A. applied on September 27, 1985, for registration of the LES BIJOUX mark in the United States Patent and Trademark Office. The application stated that the first use of the mark in interstate commerce by L'Oreal occurred on May 20, 1985; one of defendant Cosmair's employees testified that a token interstate shipment occurred at that time for the purpose of establishing use in commerce.

On December 17, 1985, the Patent and Trademark Office refused registration of defendants' LES BIJOUX mark. The trademark examiner's notice of action stated that "[r]egistration is refused because the mark, when applied to the applicant's goods, so resembles [plaintiff's mark] as to be likely to cause confusion, or to cause mistake, or to deceive." [3]

---

1. Trademark Principal Register Certificate, Complaint, Exhibit 2.

2. *See* Affidavit of Susan Freeman, Exhibit 1.

3. Notice of Action, 12/17/85, Complaint, Exhibit 4.

Plaintiff's president testified that Sonora first became aware of defendants' LES BIJOUX product through an advertisement in the January 1986 issue of Glamour magazine, which was in circulation during December 1985. On December 23, 1985, plaintiff's Canadian trademark counsel wrote to Cosmair requesting immediate cessation of use of the LES BIJOUX name. However, Cosmair has continued to promote and advertise its LES BIJOUX products; Cosmair's employee responsible for the LES BIJOUX marketing effort testified that Cosmair has spent approximately $2 million in advertising and related activities since September 1985. On March 10, 1986, plaintiff commenced this action.

Plaintiff contends that the defendants' name, LES BIJOUX, is so similar to its own registered BIJOU mark, as applied to eyeshadow products, that confusion is inevitable. Indeed, plaintiff argues, preliminary relief is necessary lest plaintiff's registered mark be effectively nullified by Cosmair's large-scale advertising campaign. Defendants contend that preliminary injunctive relief is inappropriate, founding their position upon the allegation that plaintiff's mark is invalid. The essence of defendants' argument on this point is that plaintiff's packaging of its BIJOU products is not in compliance with the regulations of the Food and Drug Administration ("FDA"). Because the plaintiff's products are not in compliance with FDA regulations, defendants argue, plaintiff's goods are not legitimately in commerce, and the mark is not in use. Plaintiff denies each of these contentions. On March 20, 1986, ten days after the commencement of this action, defendants filed a petition to cancel plaintiff's trademark registration presenting the same claims which form the basis of their counterclaim here; defendants argue that this Court should stay its determination of the preliminary injunction motion pending the resolution of the petition for cancellation by the Trademark Trial and Appeals Board ("TTAB").

## DISCUSSION

■ At the threshold, the Court in the exercise of its discretion denies defendants' application for a stay pending resolution of the proceedings before the TTAB. The issues posed in the administrative proceeding are identical to those raised by defendants in their counterclaim in this litigation; questions of the validity of trademark registration are within the competence of the district court, and can be conclusively determined in this forum. Moreover, the Court notes that the Commissioner of Patents has held that, inasmuch as TTAB determinations of the validity of registration are merely advisory to the courts, it is preferable for the TTAB to stay its own proceedings where parallel litigation occurs in the district court.[4]

The burden which plaintiff must meet in establishing its entitlement to a preliminary injunction is well-established by the decisions of our Court of Appeals. Plaintiff must show (1) irreparable harm and (2) either (a) likelihood of success on the merits or (b) that there are serious questions going to the merits and that the balance of hardships tips decidedly in the plaintiff's favor.[5] In trademark cases, "[i]n the preliminary injunction context, a showing of likelihood of confusion as to source or sponsorship establishes the requisite likelihood of success on the merits as well as risk of irreparable harm." [6]

■ Thus, the question is whether there is a substantial likelihood of confusion between plaintiff's registered mark BIJOU

---

**4.** *The Other Tel. Co. v. Connecticut Nat'l Tel. Co.,* 181 U.S.P.Q. 779, 782 (Com'r 1974).

**5.** *See Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2d Cir.1985); *Buckingham Corp. v. Karp,* 762 F.2d 257, 261 (2d Cir.1985); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam).

**6.** *Standard & Poor's Corp. v. Commodity Exchange, Inc.,* 683 F.2d 704, 708 (2d Cir.1982); *see General Motors Corp. v. Gibson Chem. & Oil Corp.,* 786 F.2d 105, 109–10 (2d Cir.1986); *American Home Prods. v. Johnson Chem. Co.,* 589 F.2d 103, 106 (2d Cir.1978).

and defendants' mark LES BIJOUX. Both marks are constructed from the French noun "bijou," meaning jewel. "Bijoux" is the plural form of that noun, and in its usual pronounciation sounds identically with the word "bijou." This is more than sufficient to satisfy the familiar "idem sonans" rule.[7] As this Court has previously said, in assessing likelihood of confusion the test is "whether a substantial number of ordinarily prudent purchasers are likely to be misled or confused as to the source of the different products."[8] Plaintiff's mark is used in connection with the sale of eyeshadow and other color face-makeup; defendants' mark is used in connection with the marketing of eyeshadow. The trademark examiner who rejected defendants' application for registration of their mark characterized the respective products as "closely related, if not identical."[9] Plaintiff's president testified that defendants' L'Oreal products are sold in approximately 95% of the retail outlets in which plaintiff's goods are available. Upon the entire record, the Court finds that plaintiff has abundantly met its burden of demonstrating that there is a substantial likelihood of confusion arising from the defendants' use of its LES BIJOUX mark.

Defendants nonetheless maintain that a preliminary injunction should not issue, arguing that plaintiff's alleged non-compliance with federal packaging regulations renders its goods illegal, and accordingly deprives plaintiff of the commercial use necessary to the vitality of its trademark. In support of their contention, defendants called as a hearing witness an attorney specializing in food and drug regulatory practice who testified to his legal conclusion that plaintiff's packaging failed to comply with applicable federal regulations.

Whether plaintiff's products comply with federal requirements is an issue to be decided at trial upon the merits of this action. Defendants argue that these asserted packaging and labeling violations are sufficient to lead to denial of trademark registration; while this issue remains undecided pending final determination of the merits, it is sufficient for the present preliminary purposes to point out that plaintiff's packaging was submitted to and reviewed by the Patent and Trademark Office prior to issuance of plaintiff's registration in 1984. Defendants' reiterated assertion that plaintiff's BIJOU products are misbranded or mislabeled does not establish the fact. The issue is one to be decided after a full trial.[10] Whether or not defendants ultimately succeed, plaintiff is currently the owner of a registered trademark, and is entitled to an injunction "to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office."[11] As our Court of Appeals has said, "[t]he fact that the Patent Office was willing to register [BIJOU] on the Principal Register creates a strong presumption of the validity of the mark."[12] To hold that this presumption may be dissipated, before trial on the merits, by allegations of invalidity would be to eviscerate the protection which Congress intended to provide to owners of registered trademarks through the injunction power of the federal courts. The Court notes that defendants, as was their right, declined to consolidate the hearing on the preliminary injunction with trial on the merits pursuant to Fed.R. Civ.P. 65(a)(2). Having done so, they now argue, in effect, that injunctive relief

7. See Polylok Corp. v. Valley Forge Fabrics, Inc., 566 F.Supp. 263, 265–66 (S.D.N.Y.1983); Stix Prods. Inc. v. United Merchants & Mfrs., Inc., 295 F.Supp. 479, 486 (S.D.N.Y.1968).

8. Mushroom Makers v. R.G. Barry Corp., 441 F.Supp. 1220, 1225 (S.D.N.Y.1977), aff'd, 580 F.2d 44 (2d Cir.1978), cert. denied, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979); Polylok Corp., 566 F.Supp. at 266.

9. Notice of Action, 12/17/85, Complaint, Exhibit 4.

10. Cf. Arco Fuel Co. v. Atlantic Richfield Co., 427 F.2d 517, 519 (2d Cir.1970).

11. 15 U.S.C. § 1116.

12. American Home Prods. v. Johnson Chem. Co., 589 F.2d 103, 106 (2d Cir.1978); see 15 U.S.C. § 1057(b).

should not be granted until after the merits have been determined, and this they may not do.

Defendants make the further argument that their expenditures for promotion and advertising of their LES BIJOUX products far outweigh those of plaintiff, which, if it ultimately prevails, may be compensated by money damages. The argument is curious. Defendants in effect contend that because they are larger than plaintiff they may continue to violate plaintiff's rights, and that plaintiff must await the day of final judgment even though upon this record it is entitled to equitable relief now. This claim is without substance.

Accordingly, plaintiff's motion for a preliminary injunction is granted. Pursuant to Fed.R.Civ.P. 65(c), plaintiff will post cash or surety company bond in the amount of $50,000.

Submit order.