**GOYA FOODS, INC.,**
**Plaintiff–Appellant,**

v.

**TROPICANA PRODUCTS, INC.,**
**Defendant–Appellee.**

**No. 577, Docket 87–7802.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 29, 1988.

Decided May 12, 1988.

Ben C. Friedman, New York City (Baker & Friedman, New York City, on brief), for plaintiff-appellant.

Mitchell H. Stabbe, Washington, D.C. (Janet R. Studley, Holland & Knight, Washington, D.C., Robert Alpert, Ladas & Parry, New York City, Steven B. Gold, Bradenton, Fla., on brief), for defendant-appellee.

Before OAKES, NEWMAN and MINER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This case presents the issue whether a district court may stay trademark infringement litigation pending the outcome of registration proceedings before the Trademark Trial and Appeal Board of the United States Patent and Trademark Office. Plaintiff-appellant Goya Foods, Inc. ("Goya") appeals from a judgment of the District Court for the Southern District of New York (Milton Pollack, Judge) dismissing its action seeking a declaratory judgment of non-infringement with respect to two of its trademarks and cancellation of one of the trademark registrations of defendant-appellee Tropicana Products, Inc. ("Tropicana"). 666 F.Supp. 585. This determination was based primarily upon a finding that there was no justiciable controversy between the parties. Goya also appeals from a subsequent order denying its motion for leave to file an amended complaint alleging the basis for apprehending a

claim of infringement by Tropicana. Judge Pollack denied leave to amend on the ground that even if the pleading was sufficient, he would have stayed the action pending completion of trademark registration proceedings before the United States Patent and Trademark Office ("PTO"). We need not determine whether the original complaint stated a claim because we conclude that in any event the pendency of a PTO proceeding was not a proper basis to forestall Goya's lawsuit. We therefore reverse and remand to afford Goya an opportunity to amend its complaint.

## Background

Goya and its predecessors have used the TROPICOLA and TROPICOCO trademarks continuously since 1974 to sell cola- and coconut-flavored soft drink products. Goya acquired federal registrations to these trademarks by assignment on March 25, 1977, but failure to file timely proof of continued use resulted in automatic cancellation of the registrations. *See* 15 U.S.C. § 1058(b) (1982). On January 25, 1985, Goya commenced re-registration proceedings with the PTO. The TROPICOLA and TROPICOCO applications were published in the PTO's *Official Gazette, see* 15 U.S.C. § 1062(a) (1982), on July 2, 1985, and August 26, 1986, respectively.

On October 30, 1985, Tropicana commenced an opposition proceeding before the PTO's Trademark Trial and Appeal Board ("TTAB") challenging Goya's proposed registration of the TROPICOLA mark. *See* 15 U.S.C. § 1063 (1982). Tropicana's Notice of Opposition asserted that the TROPICOLA mark too closely resembled Tropicana's own registered marks, TROPICANA, TROPIC–ANA, and TROPI, used on its non-carbonated fruit juice products, creating a likelihood of confusion, mistake, or deception among consumers. The Notice of Opposition further alleged that Tropicana itself had made prior use of the TROPICOLA mark and that Goya had adopted the TROPICOLA mark "with full knowledge of" Tropicana's "pre-existing rights to the marks TROPICANA and TROPIC–ANA." For the foregoing reasons, and because the TROPICOLA bever-

age is allegedly of inferior quality compared to Tropicana's products, the Notice of Opposition concluded that approval of Goya's TROPICOLA application would cause Tropicana irreparable harm. On September 25, 1986, Tropicana commenced opposition proceedings before the TTAB challenging Goya's proposed registratin of the TROPICOCO mark. The allegations contained in the Notice of Opposition are substantially the same as those set forth in the TROPICOLA opposition notice. The TTAB consolidated the two proceedings on April 24, 1987. Discovery was scheduled to close June 29, 1987, with final briefing due in mid–1988.

On May 21, 1987, Goya filed a complaint in the Southern District of New York seeking a declaration that it had not infringed Tropicana's trademarks and cancellation of Tropicana's registration for TROPI. The TTAB granted Goya's request to suspend the administration hearings, *see* 37 C.F.R. § 2.117 (1987), with leave to resume the proceedings in the event the District Court action was stayed or dismissed. On August 6, 1987, the District Judge dismissed the complaint for lack of a justiciable controversy, finding that the pending registration opposition proceeding did not, without more, give rise to an "actual controversy" between the parties. The District Judge also indicated his reluctance to "intercede gratuitously in the unfinished and pending [TTAB] administrative proceedings." 666 F.Supp. at 589.

Goya next moved for leave to amend its complaint pursuant to Fed.R.Civ.P. 15(a), in order to "plead[] with specificity those acts of TROPICANA which give rise to GOYA's real and reasonable apprehension that TROPICANA intends to sue GOYA for infringement and damages," Appellant's Br. at 14. The District Judge denied this motion on August 17, 1987, reiterating his intention not to interfere with the progress of the TTAB registration proceeding. Judge Pollack expressed concern both that the parties' investment of time and resources in the TTAB proceeding "should not be wasted" and that the TTAB's "unique experience and expertise" should be enlisted before consideration of Goya's

lawsuit. 666 F.Supp. at 590. These factors apparently led the District Judge to view the Rule 15 motion as futile because "this Court would at all events enter a stay pending a Patent Office decision." *Id.* at 3. The dismissal of the complaint was modified, however, to be without prejudice to the institution of an amended claim after a final decision by the TTAB. *Id.*

### Discussion

The narrow issue presented is whether the pendency of the registration proceeding before the TTAB was an appropriate basis for the denial of Goya's motion to amend its complaint seeking primarily a declaration of non-infringement. The rationale of the District Court's determination is essentially the doctrine of "primary jurisdiction," which guards against premature judicial encroachment upon an agency's sphere of responsibility and expertise. *See Sam S. Goldstein Industries, Inc. v. Botany Industries, Inc.*, 301 F.Supp. 728, 731 (S.D. N.Y.1969). This doctrine is the explicit basis of the decisions primarily relied upon by the District Judge in his dismissal of Goya's complaint and denial of leave to amend, *see, e.g., C–Cure Chemical Co. v. Secure Adhesives Corp.*, 571 F.Supp. 808, 823 (W.D.N.Y.1983); *The Driving Force, Inc. v. Manpower, Inc.*, 498 F.Supp. 21, 24 (E.D.Pa.1980).

■ The doctrine of primary jurisdiction represents a version of the administrative exhaustion requirement under circumstances in which a judicially cognizable claim is presented but "enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body...." *United States v. Western Pacific R.R.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). The rationale for the doctrine is two-fold. First, it ensures " '[u]niformity and consistency in the regulation of business entrusted to a particular agency.' " *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303–04, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643 (1976) (quoting *Far East Conference v.*

*United States*, 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952)). Second, the doctrine is intended to recognize that, with respect to certain matters, "the expert and specialized knowledge of the agencies" should be ascertained before judicial consideration of the legal claim. *United States v. Western Pacific R.R., supra*, 352 U.S. at 64, 77 S.Ct. at 165. As the Supreme Court has observed in light of these factors:

> The doctrine of primary jurisdiction thus does "more than prescribe the mere procedural timetable of the lawsuit. It is a doctrine allocating the law-making power over certain aspects" of commercial relations. "It transfers from court to agency the power to determine" some of the incidents of such relations.

*Id.* at 65, 77 S.Ct. at 165–66 (quoting Jaffe, *Primary Jurisdiction Reconsidered*, 102 U.Pa.L.Rev. 577, 583–84 (1954)).

An examination of the cases illustrates the relatively narrow scope of the doctrine of primary jurisdiction. The doctrine has been applied only when a lawsuit raises an issue, frequently the validity of a commercial rate or practice, committed by Congress in the first instance to an agency's determination, "particularly when the issue involves technical questions of fact uniquely within the expertise and experience of an agency." *Nader v. Allegheny Airlines, Inc., supra*, 426 U.S. at 304, 96 S.Ct. at 1987. *See, e.g., Far East Conference v. United States, supra* (antitrust action challenging shipping rates properly within primary jurisdiction of the Federal Maritime Board); *Texas & Pacific Ry. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907) (shipper challenging carrier's rate must seek redress initially through the Interstate Commerce Commission); *Danna v. Air France*, 463 F.2d 407 (2d Cir.1972) (claim under Federal Aviation Act challenging reasonableness and discriminatory effect of airline's tariff initially a question for Civil Aeronautics Board). Application of the doctrine has been refused when the issue at stake is legal in nature and lies within the traditional realm of judicial competence. *See Nader v. Allegheny Airlines, supra* (Civil Aeronautics

Board does not have primary jurisdiction over fraudulent misrepresentation claim against air carrier for failure to disclose overbooking practices); *General Electric Co. v. MV NEDLLOYD,* 817 F.2d 1022, 1026 (2d Cir.1987) (Federal Maritime Commission does not have primary jurisdiction over determination of reasonableness of *ad valorem* rate), *cert. denied,* —— U.S. ——, 108 S.Ct. 710, 98 L.Ed.2d 661 (1988); *Board of Education v. Harris,* 622 F.2d 599, 606–07 (2d Cir.1979) (HEW does not have primary jurisdiction over waiver of ineligibility under Emergency School Aid Act), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 940, 67 L.Ed.2d 110 (1981).[1]

The applicability of the primary jurisdiction doctrine in the field of trademark law has not been considered by the Supreme Court or the Courts of Appeals. District Courts have divided on the issue. *Compare American Bakeries Co. v. Pan–O–Gold Baking Co.,* 650 F.Supp. 563 (D.Minn. 1986) (refusing to stay infringement claim pending outcome of TTAB registration proceeding), *and Continental Connector Corp. v. Continental Specialties Corp.,* 413 F.Supp. 1347 (D.Conn.1976) (exercising jurisdiction in infringement action over counterclaim seeking denial of registration despite pending TTAB registration proceedings regarding same mark), *with C–Cure Chemical Co. v. Secure Adhesives Corp., supra,* 571 F.Supp. at 823 (staying infringement action pending outcome of TTAB registration cancellation proceeding), *and The Driving Force, Inc. v. Manpower, Inc., supra,* 498 F.Supp. at 25 (same). Whether the primary jurisdiction doctrine warrants a stay of a suit claiming trademark infringement or requesting a declaration of non-infringement, pending TTAB registration proceedings, requires consideration of the nature of registration proceedings and infringement actions.

The Lanham Act provides for federal trademark registration and authorizes the PTO to refuse registration of a mark that "so resembles a mark registered in the Patent and Trademark Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive...." 15 U.S.C. § 1052(d). An opposition to a registration may be initiated by "[a]ny person who believes that he would be damaged by the registration of a mark," 15 U.S.C. § 1063, and the TTAB is established "to determine and decide the respective rights of registration" in contested proceedings, 15 U.S.C. § 1067. An applicant for registration or party to an opposition or cancellation proceeding disappointed with the decision of the TTAB may either appeal the decision to the United States Court of Appeals for the Federal Circuit, 15 U.S.C. § 1071(a) (Supp. IV 1986), or bring a civil action in a United States District Court, 15 U.S.C. § 1071(b).

In significant respects this basic framework of federal trademark registration differs from those in which the doctrine of primary jurisdiction applies. The section 1071(b) action in a district court is not, strictly speaking, an "appeal" at all, but an independent judicial proceeding provided as an alternative to a direct appeal to the Federal Circuit under section 1071(a). *See Stern Apparel Corp. v. Raingard, Inc.,* 87 F.Supp. 621, 624 (S.D.N.Y.1949). Thus, although the PTO's determination in the registration proceedings is considered controlling in the civil action on issues of fact "unless the contrary is established by testimony which in character and amount

---

**1.** At least one Circuit has interpreted the doctrine of primary jurisdiction to permit initial reference of a dispute to the relevant administrative agency if prior agency consideration will be a "material aid" to the ultimate decision, even if the issue to be determined was not "solely within the agency's competence." *Mississippi Power & Light Co. v. United Gas Pipe Line Co.,* 532 F.2d 412, 418 (5th Cir.1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977). This standard was developed, however, in the context of heavily regulated industries in order to avoid the possibility that "a final decision was left to the courts [without agency input] even though the litigation had a profound impact on the regulatory process," *id.,* and the Fifth Circuit warned that application of the doctrine "is particularly inappropriate where the litigation deals with a single event which requires no continuing supervision by the regulatory agency," *id.* at 419.

carries thorough conviction," *Wilson Jones Co. v. Gilbert & Bennett Manufacturing Co.*, 332 F.2d 216, 218 (2d Cir.1964) (citations omitted), this ostensibly deferential standard is substantially qualified because "[t]he civil action before the District Court is intended to be a trial *de novo.*" *Id.* "[W]hen registration decisions of the Patent and Trademark Office are litigated in a district court pursuant to 15 U.S.C. § 1071(b), the proceeding is virtually *de novo,* since additional cross-examination and presentation of additional testimony is permitted. The record made in the Patent and Trademark Office is admitted in evidence, but the factfinding of that office is not conclusive, nor is the court's consideration limited to that record." *Continental Connector Corp. v. Continental Specialties Corp., supra,* 413 F.Supp. at 1350 (citations omitted). *See also American Bakeries Co. v. Pan–O–Gold Baking Co., supra,* 650 F.Supp. at 567; *Sonora Cosmetics, Inc. v. L'Oreal S.A.,* 631 F.Supp. 626, 629 (S.D.N.Y.), *aff'd mem.,* 795 F.2d 1005 (2d Cir.1986); *Sam S. Goldstein Industries, Inc. v. Botany Industries, Inc., supra,* 301 F.Supp. at 731. This scheme of "review" is thus some distance from the traditional arena of primary jurisdiction, " 'a doctrine *allocating the law-making power* over certain aspects' of commercial relations." *United States v. Western Pacific R.R., supra,* 352 U.S. at 65, 77 S.Ct. at 165 (quoting Jaffe, *Primary Jurisdiction Reconsidered,* 102 U.Pa.L.Rev. 577, 583–84 (1954)) (emphasis added).

This inclination against according excessive deference to pending PTO proceedings is reenforced upon consideration of the nature of the registration determination itself. We are not dealing here with a regulated industry in which policy determinations are calculated and rates are fixed in order to calibrate carefully an economic actor's position within a market under agency control, and the PTO's decision to permit, deny, or cancel registration is not the type of agency action that secures "[u]niformity and consistency in the regulation of business entrusted to a particular agency." *Far East Conference v. United States, supra,* 342 U.S. at 574, 72 S.Ct. at 494. Nor does the registration determination raise "technical questions of fact uniquely within the expertise and experience of an agency," *Nader v. Allegheny Airlines, supra,* 426 U.S. at 304, 96 S.Ct. at 1987. Likelihood of consumer confusion, which is relevant to the registration determination under 15 U.S.C. § 1052(d), is a legal standard with which courts have long-standing familiarity in resolving suits arising under both the Lanham Act and the common law of trademark infringement and unfair competition. *See, e.g., Mushroom Makers, Inc. v. R.G. Barry Corp.,* 580 F.2d 44, 47 (2d Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). Like the standard of "fraudulent misrepresentation" at issue in *Nader v. Allegheny Airlines, supra,* the legal question in trademark registration proceedings —particularly those involving opposition on grounds of consumer confusion—is "within the conventional competence of the courts, and the judgment of a technically expert body is not likely to be helpful in the application of these standards to the facts of th[e particular] case," 426 U.S. at 305–06, 96 S.Ct. at 1987–88 (footnote omitted). *See American Bakeries Co. v. Pan–O–Gold Baking Co., supra,* 650 F.Supp. at 567; *cf. General Electric Co. v. MV NEDLLOYD, supra,* 817 F.2d at 1027–28 (question of reasonableness of *ad valorem* rate "involves the application of common law principles more competently decided in a judicial forum") (citations omitted).

If a district court action involves only the issue of whether a mark is entitled to registration and if subject matter jurisdiction is available, *see Continental Connector Corp. v. Continental Specialties Corp., supra,* 413 F.Supp. at 1348–49, the doctrine of primary jurisdiction might well be applicable, despite the differences between the trademark registration scheme and other regulatory patterns. In such a case, the benefits of awaiting the decision of the PTO would rarely, if ever, be outweighed by the litigants' need for a prompt adjudication. But where, as in the pending case, a district court suit concerns infringement, the interest in prompt adjudication far out-

weighs the value of having the views of the PTO. Whether a litigant is seeking to halt an alleged infringement or, as in this case, seeking a declaration of non-infringement, it is entitled to have the infringement issue resolved promptly so that it may conduct its business affairs in accordance with the court's determination of its rights. Delaying consideration of Goya's claim pending the outcome of the TTAB proceedings undercuts the purpose of declaratory relief by forcing Goya either to abandon use of trademarks it has used for more than a decade or to "persist in piling up potential damages." *Dewey & Almy Chemical Co. v. American Anode, Inc.*, 137 F.2d 68, 71 (3d Cir.), *cert. denied*, 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454 (1943).

■ It is true that "under section 7(b) of the Lanham Act, a certificate of registration ... is prima facie evidence of the validity of the registration, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the mark in commerce on the goods or services specified therein." 4A R. Callman, *The Law of Unfair Competition, Trademarks and Monopolies* § 25.05, at 20 (4th ed. 1987). *See* 15 U.S.C. § 1057(b). These presumptions are nonetheless rebuttable, and by obtaining (or resisting cancellation of) a federal registration a party does not significantly affect the course of an infringement action. Moreover, the pertinent point in the present case is that the *absence* of a registration creates no contrary presumptions, and the PTO's denial of Goya's application to re-register its marks would establish no legally compelled adverse consequences in Goya's action seeking a declaration of non-infringement of Tropicana's marks. *See American Bakeries Co. v. Pan–O–Gold Baking Co., supra*, 650 F.Supp. at 567 n. 3.

Presumably, awaiting the PTO's registration decision would allow the District Court to enlist the PTO's reasoning and even its results in support of its own conclusions, assuming the registration decision rested on grounds relevant to the infringement claim. But the outcome of the PTO registration proceeding would not affect the legal standard applied in the infringement claim or the scope of the required fact-finding. The District Court would still independently have to determine the validity and priority of the marks and the likelihood of consumer confusion as to the source of the goods, *see Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir.1986); *Mushroom Makers, Inc. v. R.G. Barry Corp., supra*, 580 F.2d at 47–48, with this latter issue to be resolved not by reference to a registration determination by the PTO but by application of the multi-factor balancing test set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961).

In relying on the pendency of TTAB registration proceedings as a basis for denying leave to amend, the District Judge applied an incorrect legal standard and thereby exceeded his discretion. We reverse and remand with instructions to grant Goya an opportunity to amend, to consider whether the amended complaint adequately alleges a sufficient controversy concerning infringement to warrant entertaining Goya's action for a declaratory judgment, and for such further proceedings as may be warranted.

Reversed and remanded.