**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DEAN RHOADES; DERMANEW, INC., a
California corporation,
              *Plaintiffs-Appellants,*

              v.

AVON PRODUCTS, INC., a New York
corporation,
              *Defendant-Appellee.*

No. 05-56047

D.C. No.
CV-05-02169-R

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
May 7, 2007—Pasadena, California

Filed October 15, 2007

Before: John T. Noonan, Andrew J. Kleinfeld, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

13943

## COUNSEL

Steven A. Freund and Donald B. Rosen, Law Offices of Steven A. Freund; and Howard Posner, Los Angeles, California, for the plaintiffs-appellants.

Michelle M. Graham, and William R. Golden, Jr., Kelley Drye & Warren, LLP, New York, New York, for the defendant-appellee.

## OPINION

PAEZ, Circuit Judge:

In this trademark declaratory relief action, we must decide whether the district court properly dismissed Plaintiffs' case for lack of subject matter jurisdiction. In their complaint, Plaintiffs sought a declaration that several of their trademarks did not infringe on Defendant's registered marks. The jurisdictional issue turns on whether Plaintiffs alleged a constitutionally sufficient case or controversy in their First Amended Complaint ("FAC"). We must also decide whether related proceedings that were pending before the Trademark Trial and Appeal Board ("TTAB") provided an appropriate basis for the district court to invoke the doctrine of primary jurisdiction in order to dismiss Plaintiffs' action and, if not, whether the court properly exercised its discretion under 28 U.S.C. § 2201 when it declined to assert jurisdiction.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we hold that the allegations in the FAC alleged a true case or controversy that established subject matter jurisdiction. We also hold that, although the TTAB provides a forum to address trademark registration issues, the availability of such a forum does not justify the application of the doctrine of primary jurisdiction as a basis for dismissing Plaintiffs' federal court action. Thus, Plaintiffs were not required to wait for the completion of TTAB proceedings before seeking declaratory relief in federal court. We further hold that, under the circumstances of this case, the district court abused its discretion in declining to assert jurisdiction over Plaintiffs' request for declaratory relief. Finally, because of the firmly expressed

views of the assigned district judge, we direct that, on remand, the case be reassigned to a new judge.

# I.

## Factual and Procedural Background

DermaNew is a cosmetics and skin care company that patented and distributes, among other things, hand-held microdermabrasion devices and related skin care products.[1] DermaNew's various products and slogans include "DermaNew," "KeraNew," "GemaNew," "DermaNew Institute," "If It Is Not DermaNew, It Is Not Personal Microdermabrasion," and "DermaNew Palm Microdermabrasion System." Plaintiff Dean Rhoades, who owns DermaNew and these products, has attempted to register these marks with the United States Patent and Trademark Office ("PTO"). Avon Products, Inc., ("Avon"), a well-known beauty product company that distributes a skin-care product line called ANEW, challenged DermaNew's registration applications in the TTAB. Avon contested five of DermaNew's registration applications by filing opposition proceedings, and requested the cancellation of the registration of two more. *See* 37 C.F.R. §§ 2.61-2.209 (describing the rules of practice in trademark cases). At the time Plaintiffs commenced their federal court action, therefore, seven trademark proceedings were pending before the TTAB. Avon also initiated opposition or cancellation proceedings against DermaNew in other countries, including Brazil, Canada, Hong Kong, Israel, South Korea, and the European Community.

In 2001, soon after Avon filed its first TTAB opposition

---

[1]Microdermabrasion is a cosmetic procedure popular in spas and doctors' offices in which the dead outermost surface layer of the skin is partially or completely removed by light abrasion. The procedure does not need to be performed by a physician, and is commonly used in conjunction with facial spa treatments.

proceeding, the parties began settlement negotiations. According to DermaNew's First Amended Complaint, at a settlement meeting attended by Rhoades and his wife at Avon's counsel's law offices, John Bergin, Avon's in-house chief trademark counsel

> became agitated and pounded his fist on the table, explaining in substance, if not these actual words, "You have 60 days to get rid of all your products with the DermaNew trademark on it and you will never use it again or Avon will sue you for trademark infringement and you will have to pay for our losses and legal fees, too." Additional comments by Bergin at that meeting included repetition of the threat of a trademark infringement lawsuit, and a promise that Avon would appeal any adverse court decision.

Avon responds that these allegations are "wholly fabricated."

Settlement negotiations lasted more than four years, always, according to the FAC, "under the explicit threat of a[ trademark] infringement lawsuit." For example, on October 4, 2001, Avon's counsel sent a letter "for settlement purposes only" that stated that "Avon has lost confidence that a settlement will realistically take place" and that "if [DermaNew] is unwilling to accept [Avon's settlement] terms . . . , we will immediately proceed with all pending proceedings and initiate whatever additional proceedings or litigation is [sic] necessary to protect Avon's trademark rights." On March 22, 2005, Avon's counsel informed DermaNew's counsel that "Avon would not 'give up its right to damages' " unless DermaNew accepted Avon's settlement offer. DermaNew interpreted this statement as threatening an infringement lawsuit because only in a federal court infringement lawsuit could Avon recover damages. *See* 15 U.S.C. § 1114.[2] Finally, on March 24, 2005, Avon's counsel declared negotiations to be "at an impasse."

---

[2]Again, Avon denies that it threatened Plaintiffs.

On March 24, 2005, DermaNew filed a complaint in the Central District of California, seeking a declaratory judgment that its trademark applications do not infringe on Avon's. *See* 28 U.S.C. § 2201. Avon responded with a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting that the district court lacked subject matter jurisdiction and, in the alternative, that the court should decline to exercise jurisdiction because the action was brought in bad faith to avoid discovery obligations in the TTAB proceedings. DermaNew responded by amending its complaint ("the FAC"), and by filing an opposition to the motion to dismiss. The FAC attempted to cure the alleged jurisdictional defects in the original complaint, while the opposition to the motion to dismiss forcefully disputed the allegations of bad faith. The opposition noted, for instance, that "by filing the instant complaint [for declaratory relief] Rhoades *will have the same* discovery obligations, including depositions, as he would in the multitude of proceedings in the TTAB, except the discovery will be in *one* proceeding rather than *seven* or more."

Avon's reply to the opposition argued that the FAC did not cure the jurisdictional defects, largely because the alleged threats of infringement litigation were excludable under Federal Rules of Evidence 408, which limits the use of statements made during settlement negotiations. At the hearing on the motion to dismiss, DermaNew's counsel tried to respond to Avon's arguments, but the court ruled, without any additional elaboration:

> I think that the complaint is improper, brought for an improper motive, and I'm not exercising my discretion to undertake the declaratory judgment action since it should be back where it belongs and be finished there motion [sic]. And the motion to dismiss is granted.

When DermaNew tried to argue that one district court action would better serve judicial economy than seven TTAB actions

that might ultimately end up as an infringement action in the district court anyway, the court interrupted:

> "Counsel, I've already ordered. I gave you the opportunity of an order."

The hearing was brief, essentially consisting of the above colloquy.

The court followed its oral ruling with a written order dismissing the action pursuant to Rules 12(b)(1) (lack of jurisdiction) and 12(b)(6) (failure to state a claim upon which relief can be granted). DermaNew timely appealed.

## II.

### STANDARD OF REVIEW

We review *de novo* dismissals under Rules 12(b)(1) and 12(b)(6). *Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007). "[F]or the purposes of" reviewing such dismissals, and where, as here, no evidentiary hearing has been held, "all facts [alleged in the complaint] are presumed to be true." *Id.*; *see McLachlan v. Bell*, 261 F.3d 908, 909 (9th Cir. 2001). District court decisions "about the propriety of hearing declaratory relief actions . . . [are] reviewed for abuse of discretion." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995).

## III.

### DISCUSSION

### A.   *Dismissal Under Rule 12(b)(1)*[3]

---

[3]We agree with DermaNew that the district court erred in denying DermaNew's motion to amend the judgment to reflect a dismissal based solely on Rule 12(b)(1), and not based on Rule 12(b)(6). Avon's motion to dismiss was grounded entirely in the argument that DermaNew had not

As required by Article III, courts may adjudicate only actual cases or controversies. U.S. Const. art. III, § 2, cl.1. When presented with a claim for a declaratory judgment, therefore, federal courts must take care to ensure the presence of an actual case or controversy, such that the judgment does not become an unconstitutional advisory opinion. *See Pub. Serv. Comm'n v. Wycoff, Co.*, 344 U.S. 237, 244 (1952) ("The disagreement [underlying the declaratory relief action] must not be nebulous or contingent but must have taken on a fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them."). Absent a true case or controversy, a complaint solely for declaratory relief under 28 U.S.C. § 2201 will fail for lack of jurisdiction under Rule 12(b)(1). *See Fleck and Assoc., Inc. v. Phoenix, an Arizona Mun. Corp.*, 471 F.3d 1100, 1103-04 (9th Cir. 2006) (noting, in a declaratory relief action, that a true "case or controversy" is required to withstand a Rule 12(b)(1) motion for lack of jurisdiction).

**[1]** "[A]n action for a declaratory judgment that a patent [or trademark] is invalid, or that the plaintiff is not infringing, [presents] a case or controversy if the plaintiff has a real and reasonable apprehension that he will be subject to liability if he continues to manufacture his product." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555-56 (9th Cir. 1990) (internal quotation marks, alterations, and citations omitted).

> In applying this standard, we focus[ ] upon the position and perceptions of the plaintiff, declining to

satisfied the jurisdictional "case or controversy" requirement, and such motions in this circuit may be brought "only under 12(b)(1)." *Bland v. Fessler*, 88 F.3d 729, 732 n.4 (9th Cir. 1996). We therefore construe the district court's ruling as based on Rule 12(b)(1), and assess its merits accordingly.

identify specific acts or intentions of the defendant that would automatically constitute a threat of litigation. The acts of the defendant [a]re instead to be examined in view of their likely impact on competition and the risks imposed upon the plaintiff, to determine if the threat perceived by the plaintiff were [sic] real and reasonable.

*Cheesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982); *see also* 6 J. Thomas McCarthy, Trademarks and Unfair Competition § 32.51 (4th ed. 2007) (noting that to state "an actual controversy . . . [a] threat of infringement does not have to be said in so many words. It can be expressed in the attitude of the defendant as expressed[, for example,] in 'circumspect language in a letter.' ").[4]

We conclude that DermaNew's FAC sufficiently alleged the requisite "reasonable apprehension" for purposes of Rule 12(b)(1). Even though concrete threats are not required, under our circuit's "flexible approach," in order to demonstrate a reasonable apprehension of an infringement suit, *see id.*, DermaNew's FAC alleges three:[5] 1) Avon's lawyer specifically threatened a trademark infringement suit at a meeting; 2) Avon's counsel wrote a letter threatening "additional proceedings or litigation"; and 3) Avon's counsel told DermaNew's

---

[4]To the extent that both parties rely on the Federal Circuit's articulation of this test, which requires an "explicit threat or other action by the patentee [or trademark owner]," *see Fina Research, S.A. v. Baroid, Ltd.*, 141 F.3d 1479, 1481 (Fed. Cir. 1998), that reliance is misplaced, as that burden is heavier than what we require.

[5]DermaNew did not need the court's approval to file an amended complaint when it did. Under Rule 15(a), "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a). At the time DermaNew filed its FAC, Avon had filed only its motion to dismiss. We have held that "a motion to dismiss the complaint is not a responsive pleading" within the meaning of Rule 15(a). *Miles v. Dep't of Army*, 881 F.2d 777, 781 (9th Cir. 1989). Therefore, DermaNew's FAC was procedurally appropriate.

counsel that Avon would not give up its right to damages. The first instance explicitly mentioned a trademark infringement suit; the second and third can imply only that course of action. As for the second threat, in light of the pending TTAB proceedings, a federal infringement suit was the only conceivable "additional" type of litigation. The reference to damages in the third threat is notable because the TTAB cannot grant relief on an infringement claim — either injunctive or damages — so Avon's focus on damages must refer to that recourse as well.[6]

**[2]** Under the circumstances of this case, DermaNew's perception of threats was more than reasonable. Not only did Avon allegedly make three concrete threats of infringement litigation, but it did so on the heels of years of unsuccessful and tense settlement negotiations, and after Avon initiated seven actions in the TTAB. DermaNew thus had good reason to worry about the stability and profitability of its product lines, and to suspect that Avon would make good on its threats and seek hefty damages for any infringement. *See Cheesebrough-Pond's*, 666 F.2d at 393 (holding that Plaintiffs had alleged a reasonable apprehension of an infringement suit where "[f]ailure of this court to resolve the dispute would force Cheesebrough to choose between continuing to forego competition in [its] market, and entering the market, risking substantial future damages and harm to relationships with its customers and retailers").

Avon attempts to evade the case and controversy established by the FAC by arguing that the declaratory relief action was brought in bad faith. The district court agreed, stating that

---

[6]The powers of the TTAB are limited to "determin[ing] and decid[ing] the respective rights of [trademark] registration." 15 U.S.C. § 1067(a); *see also* 15 U.S.C. §§ 1063(a), 1064. In contrast, a federal district court may, in addition to determining registration rights, 15 U.S.C. § 1119, also hear actions for trademark infringement, 15 U.S.C. § 1114, for which it may grant injunctive relief, 15 U.S.C. § 1116, and award damages, 15 U.S.C. § 1117.

"the complaint was brought for an improper motive," but we are not so convinced. Avon emphasizes McCarthy's comment that "an applicant . . . cannot short-circuit the administrative process by filing suit for declaratory judgment in the federal courts," *see* 6 McCarthy § 32:53, but ignores McCarthy's caveat on that very point, applicable here, that

> if the declaratory plaintiff has in fact been threatened with litigation for infringement . . . , it should be allowed to bring an action for declaratory judgment to determine non-infringement, and join with it a claim of invalidity of the mark and a prayer for cancellation of the declaratory defendant's federal registration.

6 McCarthy § 32:55.

[3] Moreover, Avon's "ample evidence" of DermaNew's "bad faith" is irrelevant or *de minimis*. As evidence of this "bad faith," Avon filed declarations that allegedly established that 1) DermaNew's trademarks infringed on Avon's registered marks, 2) the failure of settlement negotiations was due in part to DermaNew's "ever changing cast of counsel," and 3) by filing suit, DermaNew sought "to evade [TTAB] discovery." We cannot understand how the allegations contained in these declarations demonstrate bad faith. First, the alleged infringement is itself the subject of the lawsuit; Avon cannot premise its bad faith argument claim on the assumption that it will prevail on the ultimate trademark dispute.

[4] Second, having carefully reviewed the record, we cannot but conclude that the failed settlement negotiations were just that—failure to agree on a settlement. We are unsure why Avon insists that DermaNew's "changing" counsel or reluctance to accede to Avon's settlement requests illustrates bad faith in filing a declaratory relief action. If anything, it suggests that DermaNew filed the action after settlement stalled because it feared an infringement lawsuit. Third, Avon's alle-

gation that DermaNew filed this action to avoid TTAB discovery is perplexing given that, as DermaNew points out, "Avon will certainly propound the same discovery in district court, [so] any avoidance of discovery would have been a temporary convenience at best." DermaNew may have had strategic reasons for bringing this action, but that should not affect whether DermaNew's complaint alleged a case or controversy that established jurisdiction. As the First Circuit put it in a similar case, "absent a showing of bad faith so substantial as to foreclose equitable relief, [ ] subjective aims do not matter." *PHC v. Pioneer Healthcare, Inc.*, 75 F.3d 75, 79 (1st Cir. 1996).[7]

Avon also posits two direct responses to the threats recounted in the FAC. First, Avon argues that the threats are "wholly fabricated." Second, it argues that to the extent they are not fabricated, they are privileged, having occurred during the course of settlement negotiations, and therefore may not be considered by this court. Neither contention has merit.[8]

---

[7]Avon's citation to *Bausch & Lomb, Inc. v. CIBA Corp.*, 39 F. Supp. 2d 271 (W.D.N.Y. 1999), to support its allegation of bad faith in fact undermines the argument. In *Bausch & Lomb*, the district court declined to exercise jurisdiction because it determined "this action was designed in part as a weapon to strengthen B & L's hand in any negotiations." *Id.* at 275. In that case, however, no settlement negotiations preceded the declaratory relief action, so the court noted that "[i]f B & L had genuinely wanted to resolve the dispute amicably, it could have sought to do so without starting a lawsuit." *Id.* In contrast, in this case settlement negotiations spanned several years without success before the filing of the declaratory judgement action. Avon characterizes the facts here as "far more egregious [with respect to a bad faith showing] than those facing the *Bausch & Lomb* Court." We think not. Bausch & Lomb revealed its own bad faith by bringing a federal court action without attempting settlement, whereas DermaNew took this squabble to court only after years of effort to avoid litigation. *Bausch & Lomb* thus evidences the *lack* of bad faith in this case.

[8]Avon devotes a significant portion of its brief to explaining why pending TTAB proceedings do not themselves create a reasonable apprehension of an infringement lawsuit for declaratory judgment purposes. Avon relies on McCarthy's treatise and the Federal Circuit standard for this

### 1. Factual Allegations For the Purpose of Reviewing Motions to Dismiss

**[5]** Avon's contention that DermaNew's allegations of threats of an infringement suit are false is not relevant at this stage in the litigation. Although both parties submitted declarations in connection with the motion to dismiss, because no evidentiary hearing was held we must accept DermaNew's version of events as true for the purposes of establishing jurisdiction and surviving a 12(b)(1) motion. *McLachlan*, 261 F.3d at 909; *see also Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003) (noting that to establish the jurisdiction necessary to withstand a Rule 12(b)(1) motion, "conflicts between the facts contained in declarations submitted by the two sides must be resolved in" the plaintiff's favor).

**[6]** In other words, the question presented is whether DermaNew's FAC is, on its face, sufficient to survive a motion to dismiss, not whether the alleged facts will ultimately prove accurate. Therefore, when determining whether the district court erred in dismissing the complaint, we must take DermaNew's allegations as true. These allegations describe concrete threats of an infringement lawsuit that easily establish a

---

proposition, but has missed our own precedent holding just the opposite. *See Cheesebrough-Pond's*, 666 F.2d at 396 (explicitly rejecting the analysis of a Seventh Circuit case holding that "the filing of a notice of opposition to registration with the Patent and Trademark Office is not equivalent to a charge of infringement"). While we have noted that "a simple opposition proceeding in the Patent and Trademark Office *generally* will not raise a real and reasonable apprehension of [an infringement] suit," our "flexible approach" to these cases precludes any such black and white lines. *Id.* (holding that notice of opposition action, under the circumstances of that case, created reasonable apprehension of trademark infringement suit) (emphasis added). In any case, DermaNew has never claimed that the pending TTAB proceedings created the reasonable apprehension here. Instead, it relies on three alleged threats of a trademark infringement action in federal court.

case or controversy. *Cf. Bausch & Lomb*, 39 F. Supp. 2d at 273-74 (holding allegations insufficient to confer jurisdiction where the purported threats were nothing more than "unattributed 'rumors' ").

## 2. *Federal Rule of Evidence 408*

Even discounting the allegations of oral threats, DermaNew's FAC establishes jurisdiction. It alleges that Avon's counsel threatened an infringement suit by letter, a copy of which we have reviewed. The letter, which promises that Avon will "initiate whatever additional proceedings or litigation is necessary to protect Avon's trademark rights," is sufficient in itself to leave DermaNew with a reasonable apprehension of an infringement suit. Avon argues that we should ignore the letter because "allegations based on settlement discussions . . . are inadmissible for any purpose, including showing jurisdiction," and the letter specifically warned it was "written for settlement purposes only and shall not be admissible for any purpose in any legal proceeding." Quite simply, this argument is not an accurate statement of the law.

**[7]** Rule 408 provides as follows:

> **Rule 408. Compromise and Offers to Compromise**
>
> **(a) Prohibited uses** — Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, of amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>
> > **(1)** furnishing or offering or promising to furnish — or accepting or offering or promising to accept — a valuable consideration

in compromising or attempting to compromise the claim; and

**(2)** conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

**(b) Permitted uses** — This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

The text of the rule is clear: evidence from settlement negotiations may not be considered in court "*when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction.*" Rule 408, however, does *not* bar such evidence when "offered for [other] purposes . . . [such as] proving a witness's bias or prejudice." *See, e.g.*, *United States v. Technic Servs., Inc.*, 314 F.3d 1031, 1045 (9th Cir. 2002) (holding that evidence from settlement negotiations was admissible to prove "obstruction of the EPA's investigation"); *United States v. Pend Oreille Pub. Utility Dist. No. 1*, 926 F.2d 1502, 1507 n.4 (9th Cir. 1991) (same, where the evidence was "introduced only to prove that disputed lands were suitable for agricultural use prior to construction of [a] dam"). Notwithstanding the letter's attempt to claim an absolute privilege, therefore, statements made in settlement negotiations are only excludable under the circumstances protected by the Rule.

**[8]** Here, DermaNew does not rely on the threats in an attempt to prove whose trademark is valid, or to impeach Avon. Instead, it uses the threats to satisfy the jurisdictional requirements of an action for declaratory relief.[9] This is perfectly acceptable under Rule 408. Avon's citation to *Aspen Title & Escrow, Inc. v. Jeld-Wen, Inc.*, 677 F. Supp. 1477 (D. Ore. 1987), for the proposition that "settlement conferences in their entirety are covered under Rule 408, even when purported threats are made during those conferences," is misleading and taken out of context. The "threat" at issue in *Aspen Title* was the statement "we will put you out of business," which "Aspen contends . . . show[ed] a specific intent by defendants to drive Aspen out of business." *Id.* at 1485. The district court in that case excluded the threat because it occurred during settlement negotiations, and rightly so; the threat was offered *for the purpose* of establishing an antitrust conspiracy—for the purpose, in other words, of proving liability. *Aspen Title*, therefore, is inapposite.

**[9]** Avon makes much of the "policy behind" Rule 408, as if any recognition of statements made during settlement will ruin the "freedom of communication with respect to compromise" that the Rule protects. *Clemco Indus. v. Comm. Union Ins. Co.*, 665 F. Supp. 816, 829 (N.D. Cal. 1987). Yet the Rule, by its own terms, is one of limited applicability. In other words, Rule 408 is designed to ensure that parties may make offers during settlement negotiations without fear that those same offers will be used to establish liability should settlement efforts fail. When statements made during settlement are introduced for a purpose unrelated to liability, the policy underlying the Rule is not injured.

**[10]** DermaNew's FAC, having alleged a case or controversy, established subject matter jurisdiction. Avon's argu-

---

[9]The "other purpose" need not be specifically mentioned; those mentioned by Rule 408 are not an "exhaustive" list, "but [are instead] only illustrative." *Technic Servs.*, 314 F.3d at 1045.

ments to the contrary are unavailing. We therefore hold that the district court erred in dismissing the case based on Federal Rules of Civil Procedure 12(b)(1).[10]

## B.   *Discretionary Dismissal*

The district court's written order dismissed the case on the basis of Rule 12(b)(1). In its oral ruling at the hearing, however, it also stated it was "not exercising . . . discretion to undertake the declaratory judgment action." Because of the court's firm ruling, we view its invocation of this ground as an alternative basis for dismissing DermaNew's complaint. Accordingly, we address this discretionary ruling, and hold that the court erred here as well.

### 1.   *Primary Jurisdiction*

**[11]** In deciding not to assert jurisdiction under 28 U.S.C. § 2201, the district court stated that the complaint "should be back where it belongs and be finished there" before the TTAB. Although the court did not cite any authority, it appears to have invoked the doctrine of primary jurisdiction as a basis for declining to hear the case. *See PHC*, 75 F.3d at 80 (interpreting a district court's ruling declining to hear a declaratory relief action about trademark rights as based on a primary jurisdiction rationale even though the "district court did not use this phrase" because it said that "it saw no reason 'to take this case' from 'an administrative scheme designed to hear it' "). We hold, however, that this was not an appropriate reason to decline to entertain DermaNew's lawsuit.[11]

---

[10]In light of this conclusion, we need not address DermaNew's argument that the district court erred in denying DermaNew's motion to amend the judgment to reflect that the dismissal was "without prejudice."

[11]Although we review the ultimate decision to decline to exercise jurisdiction for abuse of discretion, *see Wilton*, 515 U.S. at 289-90, we conduct *de novo* review of the court's application of the primary jurisdiction doctrine, *Int'l Bhd. of Teamsters, Chauffeurs Warehousemen & Helpers, General Truck Drivers, Office Food and Warehouse Local 952 v. Am. Delivery Serv. Co., Inc.*, 50 F.3d 770, 773 (9th Cir. 1995).

The primary jurisdiction doctrine provides: When there is a basis for judicial action, independent of agency proceedings, courts may route the threshold decision as to certain issues to the agency charged with primary responsibility for governmental supervision or control of the particular industry or activity involved.

*United States v. Culliton*, 328 F.3d 1074, 1081 (9th Cir. 2003). We have never addressed whether a district court should defer, on primary jurisdiction grounds, a trademark declaratory relief action pending the completion of related TTAB proceedings. The First and Second Circuits have both addressed similar circumstances, however, and have held that the primary jurisdiction rationale does not justify deferral. We agree.

In *PHC v. Pioneer Healthcare*, 75 F.3d 75 (1st Cir. 1996), the First Circuit considered a dispute over the name "Pioneer Healthcare." Pioneer threatened PHC with an infringement lawsuit in two letters and initiated TTAB proceedings, and PHC responded with a declaratory judgment action in federal district court. *Id.* at 77-78. The district court dismissed the complaint for lack of jurisdiction and failure to state a claim, as well as because of primary jurisdiction considerations. *Id.* at 78-80. The First Circuit reversed, holding, *inter alia*, that the action "should not be deferred based on primary jurisdiction concerns." *Id.* at 80.

The court explained that, in general, "[t]he expertise of the agency, avoidance of conflict, indications of legislative intent, and other factors may permit, sometimes even require, . . . deference by court to agency," but that "[t]wo facts weigh[ed] heavily against deference to the administrative proceeding here." *Id.* First, the TTAB

is not an ordinary administrative agency whose findings control unless set aside after court review under

a highly deferential standard. [*Cf. Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-45 (1984).] Under the Lanham Act, where a contested Board proceeding has already addressed the validity of the mark, the Board's findings can be challenged in a civil action in district court through new evidence, and, at least to a large extent, the issues can be litigated afresh. 15 U.S.C. § 1071(b). And Congress permits an initial proceeding in the district court to challenge or affirm a federally registered mark in civil suits in which a federally registered mark is in issue, even without any prior resort to the Board. 15 U.S.C. § 1119.

Second, at least where an infringement claim is involved — whether directly asserted by an "owner" or challenged in a declaratory action — there is often some urgency. Ongoing business conduct is likely to be involved and harm, possibly irreparable, may be accruing. Further, [unlike a federal district court,] the Board cannot give relief for an infringement claim, either injunctive or by way of damages. [*See* 15 U.S.C. §§ 1063(a), 1064, 1067(a). *Cf.* 15 U.S.C. §§ 1114-1119 (powers of the district court are much broader).] Under these circumstances awaiting the Board's action is less attractive; and this is doubly so because (as already noted) its administrative findings can so easily be relitigated in court.

*Id.*

In arriving at this conclusion, the First Circuit relied on an earlier Second Circuit opinion, *Goya Foods, Inc. v. Tropicana Prod., Inc.*, 846 F.2d 848 (2d Cir. 1988). There, the court noted that

[i]f a district court action involves only the issue of whether a mark is entitled to registration and if sub-

ject matter jurisdiction is available, the doctrine of primary jurisdiction might well be applicable, despite the differences between the trademark registration scheme and other regulatory patterns. In such a case, the benefits of awaiting the decision of the [Patent and Trademark Office ("PTO")] would rarely, if ever, be outweighed by the litigants' need for prompt adjudication. But where, as in the pending case, a district court suit concerns infringement, the interest in prompt adjudication far outweighs the value of having the views of the PTO. Whether a litigant is seeking to halt an alleged infringement or, as in this case, seeking a declaration of non-infringement, it is entitled to have the infringement issue resolved promptly so that it may conduct its business affairs in accordance with the court's determination of its rights. Delaying consideration of Goya's claim pending the outcome of the TTAB proceedings undercuts the purpose of declaratory relief by forcing Goya either to abandon use of trademarks it has used for more than a decade or to persist in piling up potential damages.

*Id.* at 853-54 (citations and internal quotation marks omitted); *see also PHC*, 75 F.3d at 80-81.

**[12]** We find this reasoning persuasive. Allowing the district court to decline a declaratory relief action on a primary jurisdiction rationale is sensible only if the agency is better equipped to handle the action. Here, however, Congress has not installed the PTO as the exclusive expert in the field. As noted, parties may litigate these issues in federal court without previously exhausting their claims before the TTAB. *See, e.g.*, 15 U.S.C. § 1071(b)(1). Indeed, we have previously noted this potential for overlapping litigation as a reason why pending TTAB proceedings may themselves, under certain circumstances, create a reasonable apprehension of an infringement lawsuit. *See Cheesebrough-Pond's*, 666 F.2d at 396 (holding

that Plaintiff had alleged a reasonable apprehension of an infringement lawsuit based on Defendant's TTAB opposition action in part because "a decision of the Patent and Trademark Office allowing the registration of Chesebrough's trademark would not preclude a subsequent infringement action or be determinative of the issues involved"). More importantly, where, as here, there is a potential infringement lawsuit, federal courts are particularly well-suited to handle the claims so that parties may quickly obtain a determination of their rights without accruing potential damages.[12]

Avon's attempts to distinguish *PHC* and *Goya Foods* are not persuasive. It dismisses reliance on *PHC* because in that case the infringement threats were not made during "privileged settlement negotiations," and because the *PHC* parties had not been involved in "years of settlement talks." As already explained, however, in the context of this case the threats of trademark infringement litigation are not privileged, despite occurring during the course of settlement negotiations. Avon suggests that the "years of settlement talks" prove DermNew's bad faith, but if anything, we think they prove the opposite — that DermaNew *did* make a good faith attempt to resolve the dispute amicably.

Avon distinguishes *Goya Foods* by pointing out that the "narrow issue" in that case was whether the plaintiff should have leave to amend its complaint. That is indeed a procedural difference between that case and the instant one, but it is one without substance; in both cases the fundamental issue was whether "the pendency of a PTO proceeding was . . . a proper basis to forestall" an action for declaratory relief. *Goya*

---

[12]For this reason, Avon's contention that "Rhoades is just plain wrong to argue that the District Court is the only forum that can adjudicate all the issues between the parties in a single action" because the TTAB has consolidated the United States proceedings is itself "plain wrong." The point is not the number of TTAB proceedings, but rather that only the district court can award damages or injunctive relief in an infringement action.

*Foods*, 846 F.2d at 850. We therefore find both the First and Second Circuit's determinations to be entirely relevant and instructive in this case.[13]

[13] In light of the above considerations, we hold that the district court abused its discretion in declining to hear DermaNew's action. We agree with the Second Circuit that some situations might justify deferring a declaratory judgment case when related TTAB proceedings are pending; specifically, where the "district court action involves only the issue of whether a mark is entitled to registration," it might make more sense to resolve the registration claims at the TTAB first. *See id.*, at 853-54. On the other hand, if, as here, a potential infringement claim "requires the district court to resolve much or all of [the registration issues], it would waste everyone's time not to settle the registration issue now[, in district court]." *PHC*, 75 F.3d at 81. The deciding factor should be efficiency; the district court should exercise jurisdiction "if this course is more efficient; otherwise, not."[14] *Id.* Avon had ample opportunity to demonstrate the necessity of, or even any factor weighing in favor of, deferring the action. Instead,

---

[13]Avon relies heavily on an district court case, *Citicasters Co. v. Country Club Commc'ns*, No. 97-0678 RJK, 1997 WL 715034 (C.D. Cal. July 21, 1997) (unpublished), for its argument that district courts should "defer[ ] to the TTAB in cases where that would be the most efficient course of action." In the first place, no one contests that assertion; the question is whether, in this case, deferring to the TTAB would in fact be the most efficient course. More importantly, however, besides lacking precedential value, it is not clear that *Citicasters* involved any of the noteworthy factors present here. *Citicasters* does not explain whether the federal court proceedings there involved a claim for declaratory relief, nor is there any indication that the federal case involved an infringement action.

[14]Because the Supreme Court's decision in *Wilton v. Seven Falls*, 515 U.S. 277 (1995), involved a pending parallel *state court* action, we do not think that the factors that weighed in favor of deferral there, based mostly on concerns about comity, are applicable to the pending parallel TTAB proceedings in this case, to which the district court owes no special deference, *see id.* at 283-83 (citing factors from *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)).

it has urged upon this court borderline frivolous arguments about Rule 408 and jurisdiction. Under the circumstances, we see no reason not to order the district court to entertain this action.

## 2.   *Remand to Different Judge*

DermaNew has requested that, upon remand, the case be assigned to a different judge. *See* 28 U.S.C. § 2106. We grant that request.

> **[14]** Under § 2106, remand to a different district is appropriate if there is a demonstration of personal bias or unusual circumstances. In determining whether unusual circumstances exist the court considers:
>
> (1)   whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.
>
> The first two factors are considered to be of equal importance; moreover, a finding of either one would support remand to a different judge.

*United Nat'l Ins. Co. v. R & D Latex Corp.*, 141 F.3d 916, 920 (9th Cir. 1998) (quoting *California v. Montrose Chem. Corp.*, 104 F.3d 1507, 1521 (9th Cir. 1997)). We are persuaded by our review of the record that the assigned district court judge "cannot reasonably be expected upon remand to disregard his previously expressed views in this matter." *Id.* at 919-20.

**[15]** In this case, the district judge granted Avon's motion to dismiss without allowing DermaNew's counsel the opportunity to respond, even briefly, to Avon's Rule 408 argument. The judge reasoned that the complaint was "brought for an improper motive" and that "it should be back where it belongs." As we have explained, we have carefully reviewed the record and can find no evidence of any such "improper motive" whatsoever, and furthermore, the judge's invocation of the primary jurisdiction doctrine was legally erroneous. Under the circumstances of this case, we "conclude that if this case were before him[, the judge] would have substantial difficulty in putting his previously expressed views out of his mind."

**VACATED and REMANDED with direction that the case be reassigned to a different judge, who should exercise jurisdiction over this declaratory relief action.**