In re ASHFORD HOTELS, LTD., a/k/a AH Ltd., Debtor.

No. 99 Civ. 519(RMB).

United States District Court, S.D. New York.

July 2, 1999.

Lawrence P. Gottesman, Gordon Altman Butowsky Weitzen Shalov & Wein, New York City, for Jay F. Higgins and Charles Daniel Tyree.

Roger J. Hawke, Brown & Wood, L.L.P., New York City, for Allied Trust Banks.

Donald L Kuba, Warshaw, Burstein, Cohen, Schleisinger & Kuh, L.L.P., New York City, for Roy Babitt.

Denis J. Drebsky, Rogers & Wells, L.L.P., New York City, for Ashford Hotels, Inc.

Mary Elizabeth Tom, Office of U.S. Trustee, New York City, for U.S. Trustee.

## DECISION AND ORDER

BERMAN, District Judge.

### INTRODUCTION

This is an appeal from an order of the Honorable Jeffry H. Gallet, United States Bankruptcy Judge, Southern District of New York, entered on November 9, 1998

("Bankruptcy Court Order"). The issues before this Court are: (i) whether Jay F. Higgins and Charles Daniel Tyree ("Appellants") have standing to appeal from the Bankruptcy Court's Order, and (ii) whether the Bankruptcy Court abused its discretion when it granted the Bankruptcy Trustee's motion, dated June 4, 1998.[1] **For the reasons set forth below, the Court finds that Appellants do not have standing to appeal from the Bankruptcy Court Order.**

## I. FACTS

### Background

The parties to this appeal are involved in numerous litigations concerning events that span two countries over ten years. The Bankruptcy Court identified the following pertinent facts to this case.

Ashford Hotels, Ltd. (the "Debtor") was formed on April 20, 1988. That same year, the Debtor and its principal, William Dowling ("Dowling"), participated in a hotel development project in England known as "Nuneham Park." Allied Irish Banks, p.l.c. ("AIB") loaned £6 million for the project to Nuneham Park Ltd. ("NPL"), of which the Debtor guaranteed £3 million.

The Debtor, along with Appellants Higgins and Tyree, and Emblem B.V. ("Emblem"), all of whom are NPL's shareholders, are the parties to a January 1989 agreement (the "Shareholder's Agreement"). Seven months after entering into the Shareholder's Agreement, they entered into a second contract (the "Restructuring Agreement"). Under the Restructuring Agreement, the Debtor and Dowling were removed from Nuneham Park's management and sold their interests to Higgins, Tyree and Emblem. The Restructuring Agreement also provided, among other things, that Higgins, Tyree, and Emblem would indemnify the Debtor and Dowling for any liability arising out of the Debtor's guarantee of AIB's loan to NPL. Higgins and Tyree now claim that

the indemnity provision was fraudulently obtained. The validity of the Restructuring Agreement, including the indemnity provision, is the subject of an action for rescission brought by Higgins and Tyree against the Debtor in Supreme Court, New York County in 1992 (the "New York State Action").

The Nuneham Park project was never completed and NPL defaulted on its loan to AIB. In July 1992, AIB sued the Debtor in England to enforce its guarantee. England's High Court of Justice granted a default judgment in favor of AIB in 1992 for £3.6 million. That judgment remains unsatisfied.

In November 1992, England's High Court of Justice appointed Mark Stephen Gill as Receiver (the "Receiver") "of the Debtor's right of indemnification." The Receiver commenced an action in London (the "London Action") on behalf of the Debtor and against Higgins, Tyree and Emblem for indemnification under the Restructuring Agreement. That action is still pending.

AIB and Dowling are also defendants in an action pending in the United States District Court for the Eastern District of New York (the "Eastern District Action"). In the Eastern District Action, the plaintiffs, including Higgins, assert claims of common law fraud, aiding and abetting fraud, breach of fiduciary duty, and breach of contract. The law firm of Brown & Wood ("Brown & Wood") represents AIB in the Eastern District Action.

In 1997, Higgins and Tyree filed a Note of Issue in the New York State Action. The trial was to start in early 1998. Claiming that it lacked the necessary funds to defend the New York State Action, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on December 29, 1997 before Judge Gallet in the Bankruptcy Court of the Southern District of New York ("Bankruptcy Action").

---

**1.** The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 158(a).

The Trustee of the Debtor's estate in the Bankruptcy Action (Roy Babitt) has advised Judge Gallet that AIB has a significant interest in ensuring that the New York State Action is defended. Among other things, if the Debtor prevails in the New York State Action, the indemnification agreement will be affirmed and AIB can recover from Appellants in the London Action.

### The Funding Agreement

In May 1998 and thereafter, with the objectives of providing for the estate's administrative costs and defending the New York State Action, the Trustee and AIB entered into Funding Agreement and sought Bankruptcy Court approval pursuant to §§ 327 and 364 of the Bankruptcy Code. The terms, among others, of the Funding Agreement between the Trustee and AIB include the following: AIB offers to pay the Trustee $25,000 (the "Administrative Costs") to cover the estate's administrative expenses.[2] As a condition to AIB's offer, the Debtor is to retain Brown & Wood as counsel in the New York State Action. AIB will pay Brown & Wood's fees and expenses. In return, AIB will receive a claim against the estate for reimbursement of expenses incurred and funds advanced in connection with Brown & Wood's representation of the Trustee in the New York State Action.[3] AIB reimbursement would be subordinated (only) to payment of the Trustee's fees and expenses.

In the event that the Trustee prevails in the New York State Action, or in the event that the Receiver obtains and enforces a judgment in (or settles) the London Action and remits to AIB the "net" proceeds recovered in the London Action (the "Recovery Amount"), AIB will be reimbursed for all expenses incurred in connection with funding Brown & Wood's representation of the Trustee in the New York State Action. The Trustee will receive the lesser of (a) $500,000, or (b) five percent of the balance of the Recovery Amount net of such reimbursement. The proceeds of the Recovery Amount will go to pay creditors of the Debtor and remaining administrative expenses, if any, of the estate. AIB's claim against the debtor will be subordinated to those of the unsecured creditors. (Bankr. Dec. at 5).

### Higgins and Tyree's Counteroffer

Higgins and Tyree assert that they, too, made an "offer" in the Bankruptcy Court to the Trustee in response to the Funding Agreement. Their offer included the following: (1) a settlement of the New York State Action on stipulated facts proposed by them and entry of a judgment **against the Debtor;** (2) payment of $50,000 for the purchase of estate assets including claims against current and former officers and directors of the Debtor; and (3) subordination of Higgins' and Tyree's rights of recovery in the New York State Action to the rights of other creditors of the estate.

### Bankruptcy Court Proceeding

The Bankruptcy Court approved the Funding Agreement between the Trustee and AIB under Bankruptcy Rule 9019,[4] finding the Funding Agreement to be both reasonable and in the best interest of the Debtor's estate. In addition to securing $25,000 for administrative costs, the Agreement, **as modified by the Bankruptcy Court,** allows AIB to prosecute and defend the Trustee's claims in both New York and London. The Bankruptcy Court did not directly reach the issue of Brown & Wood's acting as Special Counsel to the

---

**2.** The estate is otherwise administratively insolvent.

**3.** The Bankruptcy Court was aware of AIB's intention to retain Brown & Wood to defend the Trustee in the New York State Action and to represent AIB in the London and Eastern District Actions, (Bankr.Dec. at 2, 6)

**4.** Bankruptcy Rule 9019(a) provides: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

Trustee, finding instead that the Funding Agreement's practical effect was to assign the Trustee's claims over to AIB, who, under the Bankruptcy Court Order, may choose its own counsel for prosecuting and defending those claims. (Bankr.Dec. at 13–14).

## II. DISCUSSION

### Standing

■ The threshhold issue facing this Court is whether Appellants have standing to challenge the Bankruptcy Court's Order approving the Funding Agreement. Although the Bankruptcy Code does not place any express restrictions upon appellate standing, the Second Circuit Court of Appeals has consistently applied an "aggrieved person" standard.[5] "An appellant must be an 'aggrieved person,' a person 'directly and adversely affected pecuniarily' by the challenged ruling of the bankruptcy court." *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 388 (2d Cir.1997). The Second Circuit has also acknowledged the need to limit appellate standing in bankruptcy cases. Otherwise, "bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order." *Kane v. Johns–Manville Corp.*, 843 F.2d 636, 642 (2d Cir.1988). *See In re Gucci*, 126 F.3d at 388; *Kabro Assocs. v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 273 (2d Cir.1997).

■ Appellants argue they have standing because they are "creditors" of the estate. It is said that creditors ordinarily have standing to appeal bankruptcy court orders that effect a disposition of estate property. *See In re Gucci*, 126 F.3d at 388; *In re Colony Hill Assocs.*, 111 F.3d at 273; *In re Johns–Manville*, 843 F.2d at 642. This general rule is based upon the assumption that "that sort of order directly affects the funds available to meet their claims." *In re Gucci*, 126 F.3d at 388. This is not the case here. Here, the Bankruptcy Court found the Debtor's estate to be insolvent. Indeed, the only (potential) assets of the Debtor's estate that might be available to pay creditors stem from the enforcement of the indemnification agreement between Appellants and the Debtor. Even though Appellants have filed proofs of claim, they are not "aggrieved" parties for purposes of this appeal. There is no real nexus between them (i.e. their alleged status as creditors) and the terms approved by the Bankruptcy Court under the Funding Agreement. Because the Bankruptcy Court's Order does not provide for a distribution of estate assets, Appellants are not "directly and adversely affected pecuniarily" by the Bankruptcy Court's Order; they do not meet the "aggrieved person" standard. *See In re Gucci*, 126 F.3d at 388

The Funding Agreement allows both the New York State Action brought by Appellants and the London Action brought against Appellants to progress so that AIB may enforce the indemnity provision and recover the guaranteed portion of its £6 million loan to the Debtor. The effect of the Bankruptcy Court Order is that the estate will be able to continue to litigate the New York State and London Actions— thus maximizing the bankrupt estate. As their counteroffer suggests, Appellants' interests are diametrically opposed to those of the Debtor's estate; they are most concerned about obtaining a judgment against the Debtor in the New York State Action and nullifying the indemnification clause, thereby minimizing the bankrupt estate (and thwarting enforcement of the judgment against them in the London Action).

---

5. This standard is derived from Section 39(c) of the Bankruptcy Act of 1898. *Kabro Assocs. v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 273 (2d Cir.1997); *Kane v. Johns–Manville Corp. (In re Johns–Man-ville)*, 843 F.2d 636, 641–42 (2d Cir.1988); *Cosmopolitan Aviation Corp. v. New York State Dep't of Transp. (In re Cosmopolitan Aviation Corp.)*, 763 F.2d 507, 513 (2d Cir.1985).

The First, Third, and Ninth Circuit Court of Appeals have held that where a party's interest in a Bankruptcy Court appeal is (only) that of a potential defendant to another lawsuit, that party is not "aggrieved" by the bankruptcy court's order and thus does not have standing to appeal. *See e.g., Travelers Insurance Co. v. H.K. Porter Co.*, 45 F.3d 737, 743 (3rd Cir.1995) ("Standing is precluded if the only interest in the bankruptcy court's order that can be demonstrated is an interest as a potential defendant in an adversary proceeding"); *In re Fondiller*, 707 F.2d 441, 443 (9th Cir.1983) ("Appellant's only demonstrable interest in the [bankruptcy court's] order is as a potential party defendant in an adversary proceeding. As such, she is not a 'person aggrieved' by [it]"); *In re El San Juan Hotel*, 809 F.2d 151, 155 (1st Cir. 1987) (same); *In re Abbott*, 183 B.R. 198, 200 (9th Cir. BAP 1995) ("Standing is not demonstrated if the only interest in a bankruptcy court's order is an interest as a potential defendant in an adversary proceeding"). For these same reasons, this Court concludes that Appellants do not have standing: they are not "directly and adversely affected pecuniarily" by the Bankruptcy Court's Order except as adversaries to the Debtor's estate in other litigations.

■ As noted, the Second Circuit has made it clear that the parties who should be able to appeal Bankruptcy Court Orders are limited. See *Kane v. Johns–Manville Corp.*, 843 F.2d at 642. *See also In re Gucci*, 126 F.3d at 388; *In re Colony Hill Assocs.*, 111 F.3d at 273. In keeping with this objective, this Court will not expand the meaning of "aggrieved persons" to cover Appellants herein.

### Bankruptcy Court's Decision

■ Even if Higgins and Tyree had standing to bring this appeal, this Court would, nevertheless, affirm the Bankruptcy Court's Order. Generally, a District Court reviews a Bankruptcy Court's findings of fact under a "clearly erroneous"

standard and its legal conclusions *de novo*. *In re Bonnanzio*, 91 F.3d 296, 300 (2d Cir.1996); *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir.1994). However, a Bankruptcy Court's approval of settlement should be reviewed "extremely deferentially." *In re Liu and Liu*, No. 98–5027, 1998 WL 890176, at *1 (2d Cir. Dec. 18, 1998) (per curiam). The Bankruptcy Court's decision "should not be overturned unless its decision is manifestly erroneous and a clear abuse of discretion." *Id.* (quoting *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y.1993)). See also *In re 47–49 Charles Street, Inc.*, 209 B.R. 618, 619 (S.D.N.Y.1997). The reviewing court need not make its own investigation into the reasonableness of the settlement. Instead, it should only "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re Liu and Liu*, 1998 WL 890176, at *1 (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir.1983)).

■ Applying this standard, there is no basis to reverse the Bankruptcy Court's Order. The only issue of law this Court would need to review *de novo* is whether the Bankruptcy Court had the authority to treat the Trustee's Motion, initially brought pursuant to Bankruptcy Code §§ 327 and 364 and Bankruptcy Rules 2014, 3002(c)(5) and 4001(c), as a settlement motion under Bankruptcy Rule 9019. In its Order, the Bankruptcy Court clearly articulated its reasons for approving the Funding Agreement as a settlement pursuant to Bankruptcy Rule 9019. The Bankruptcy Court noted the purpose of Bankruptcy Code § 364: "The purpose of allowances of administrative expenses is to encourage a debtor's creditors and other parties to continue to provide services which will aid the debtor in a successful reorganization." (Bankr.Dec. at 7) (quoting *In re Lease–A–Fleet, Inc.*, 148 B.R. 419, 425 (Bankr.E.D.Pa.1992)). Observing that the Trustee's Motion was not primarily aimed at furthering a reorganization

plan, the Court concluded that the Trustee's Motion was "really a settlement that seeks to have a creditor prosecute and defend causes of action for the Trustee." (Bankr.Dec. at 7).

■ Codifying the equitable powers of bankruptcy courts, Bankruptcy Code § 105(a) authorizes bankruptcy courts to issue any "order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. *See In re Charles & Lillian Brown's Hotel, Inc.,* 93 B.R. 49, 54 (Bankr.S.D.N.Y. 1988). Indeed, Code § 105 also grants bankruptcy courts the authority to take action *sua sponte;* it is an "omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case." *In re Charles & Lillian Brown's Hotel, Inc.,* 93 B.R. at 54 (quoting 2 *Collier on Bankruptcy* ¶ 105.01 at 105–01 (15th ed.1988)).

■ The Second Circuit has found that "Section 105(a) should be construed liberally to enjoin [actions] that might impede the reorganization process." *In re Momentum Mfg. Corp.,* 25 F.3d at 1136 (internal quotation marks omitted). The only limitation upon such equitable power is that it be used in furtherance of the provisions and goals of the Bankruptcy Code. *See* 11 U.S.C. § 105(a). *See also In re Charles & Lillian Brown's Hotel, Inc.,* 93 B.R. at 54 ("this section ... empowers the court to implement the substantive provisions of the Bankruptcy Code and Rules."). If under Code § 105 the Bankruptcy Court may take action *sua sponte,* then it is clearly within its discretion to approve the Trustee's Motion, so long as the Court's action furthers the provisions of the Bankruptcy Code. *Id.* The Bankruptcy Court found that an essential purpose of the Funding Agreement was settlement; this was a reasonable conclusion

satisfying the "clearly erroneous" standard of review. The Bankruptcy Court's decision to approve the Funding Agreement pursuant to Rule 9019 was within its equitable powers.[6]

■ As noted, Rule 9019 permits the bankruptcy court to approve a settlement where it is "both 'fair and equitable' and in the best interests of the estate." *In re Liu and Liu,* 1998 WL 890176, at *1 (quoting 10 *Collier on Bankruptcy* ¶ 9091.02 (15th ed. 1998) (Standards Governing Court Approval of a Compromise)). Here, the Bankruptcy Judge examined the proposed settlement in light of applicable standards and concluded that it met the lowest level of reasonableness and that it was in the best interest of the estate. (Bankr.Dec. at 12–13). The Bankruptcy Judge reviewed the Trustee's decision to accept AIB's Funding Agreement and found that the Trustee's acceptance of the plan was not only reasonable, but was also **"the only hope of providing a benefit to the creditors."** (Bankr.Dec. at 13) (emphasis added). Judge Gallet acted properly and within the broad discretion afforded bankruptcy court judges with respect to the approval of settlements. *See In re Liu and Liu,* 1998 WL 890176, at *1; *In re Momentum Mfg. Corp.,* 25 F.3d 1132.

### Counsel for the Trustee

The Bankruptcy Court did not reach the issue of AIB's counsel, Brown & Wood LLP, also serving as special counsel to the Trustee. However, as noted, Judge Gallet likely knew when he approved the Funding Agreement that Brown & Wood would be proposed to litigate the Trustee's claims. In his decision, Judge Gallet emphasizes the "extraordinary circumstances which permits the Trustee to have AIB prosecute and defend claims on behalf of the Debtor." (Bankr.Dec. at 13). It is clear that AIB has a strong interest in pursuing the Trustee's claims: successful prosecution of

---

6. The Bankruptcy Court Order complied with both the notice and hearing provisions of Bankruptcy Rule 9019. The parties involved in this appeal had notice of the proposed Funding Agreement and were represented at the hearing before the Bankruptcy Court on the motion.

the Trustee's claims is the estate's and AIB's only hope for recovery.

Relying upon Rule 9019, the Bankruptcy Court approved the assignment of the Trustee's claims over to AIB and approved AIB's ability to choose its own counsel: "AIB may prosecute and defend the Trustee's causes of action in the New York and London Actions. **AIB may select counsel of its choosing. AIB and its attorneys have a fiduciary obligation to the estate.**" (Bankr.Dec. at 13–14) (emphasis added).

## III. CONCLUSION AND ORDER

For the reasons stated above, the Court dismisses the appeal for lack of standing. This Decision and Order supercedes the Court's Decision and Order dated June 15, 1999.