**In re DBSD NORTH AMERICA, INC., et al., Debtors.**

**Sprint Nextel Corp., Appellant,**

v.

**DBSD North America, Inc., et al., Appellees.**

**Nos. 09–13061 (REG), 09 Civ. 9144(VM).**

United States District Court, S.D. New York.

March 30, 2010.

---

Jeffrey Bossert Clark, Kirkland & Ellis LLP (Washington), Washington, DC, Marc Jason Carmel, Kirkland & Ellis LLP (IL), Chicago, IL, for Debtors.

### *DECISION AND ORDER*

VICTOR MARRERO, District Judge.

Appellant Sprint Nextel Corporation ("Sprint") appealed, pursuant to 28 U.S.C. § 158(a) and Rules 8001(a) and 8002(a) of the Federal Rules of Bankruptcy Procedure, from an order dated September 30, 2009 (the "Bankruptcy Order") of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") which denied Sprint's claims for amounts it asserts it was owed by the appellee debtors (the "Debtors").[1]

---

1. The Debtors are the following nine affiliated companies currently in bankruptcy in the jointly-administered Chapter 11 Case No. 09– 13061 in the Bankruptcy Court: DBSD North America, Inc. ("DBSD, N.A."); 3421554 Canada, Inc.; DBSD Satellite Management, LLC;

For the reasons set forth below, the Bankruptcy Order is AFFIRMED.

## I. *BACKGROUND*[2]

The Debtors comprise a developmental-stage business formed for the purpose of providing mobile satellite services ("MSS"). In very general terms, MSS provide information from satellites to mobile and portable devices (such as cell phones). The lead Debtor is DBSD, N.A., a holding company and the direct or indirect corporate parent of each of the other Debtors, including New Satellite Services. New Satellite Services is the entity among the Debtors that holds a license from the Federal Communications Commission (the "FCC") authorizing the use of some of the 2–gigahertz radio frequency spectrum band (the "2 GHz Band"). The other Debtors own assets or provide ancillary services involved with the delivery of the MSS provided by the Debtors.

In 1997, part of the 2 GHz Band was first designated for MSS use. At the time, however, the band was already occupied by unrelated Broadcast Auxiliary Service entities (consequently known as "BAS Incumbents"). Concerned about potential interference between BAS Incumbents and MSS operators on the same spectrum, the FCC required BAS Incumbents to relocate to another spectrum (the "BAS Relocation"). Recognizing the significant costs involved in the BAS Relocation, the FCC also directed that any new 2 GHz Band occupant, such as New Satellite Services, bear the costs required to relocate the BAS Incumbents.

Sprint, unlike New Satellite Services, is not an MSS operator, but a land-based commercial mobile radio service provider. In 2004, Sprint's radio service at least potentially interfered with the radio communications of public safety services (e.g., police, fire, and other first responders) and other private services. At that same time, MSS operators had still not consummated the BAS Relocation. To resolve the potential Sprint-interference issue and the still-outstanding BAS Relocation issue, Sprint proposed (1) relinquishing its right to use the potentially-interfering spectrum in exchange for new spectrum in the band previously reserved for MSS operators (the same 2 GHz Band from which the BAS Incumbents were to be relocated), and (2) to undertake certain responsibilities relating to the inchoate BAS Relocation. By order in 2004, the FCC authorized the implementation of this plan.

Sprint did not volunteer to incur the substantial costs of BAS Relocation out of pure altruism. The 2 GHz Band was significantly more valuable than Sprint's former band. The FCC valued the difference between Sprint's interest in the 2 GHz Band and its former band at $2.8 billion. Thus, Sprint had received a $2.8 billion windfall for moving spectrum bands.

DBSD Satellite North America Limited; DBSD Satellite Services G.P.; DBSD Satellite Services Limited; DBSD Services Limited; New DBSD Satellite Services G.P. ("New Satellite Services"); and SSG UK Limited. The Official Committee of Unsecured Creditors of DBSD, N.A. is also an appellee.

2. The factual summary herein derives primarily from the following documents: Initial Brief of Appellant Sprint Nextel Corp., dated November 18, 2009 ("Sprint Br."); Opposition Brief of Appellees Debtors to Sprint Nextel's Appeal, dated December 11, 2009 ("Debtors' Opp. Br."); Joinder of Appellee the Official Committee of Unsecured Creditors of DBSD North America, Inc.; Opposition Brief of Appellee Debtors to Sprint Nextel's Appeal, dated December 11, 2009; and Reply Brief of Appellant Sprint Nextel Corporation, dated December 21, 2009. Except where specifically referenced, no further citation to these sources will be made.

To account for this windfall, the FCC required Sprint to make a true-up payment of roughly $2.8 billion to United States Treasury (the "$2.8 Billion True–Up"). However, the FCC allowed Sprint a credit against the $2.8 Billion True–Up for its band-clearing costs in both its former band and the 2 GHz Band. The FCC issued orders [3] (the "FCC Orders") delineating the scope of both Sprint's band-clearing obligations and its right to seek reimbursement from other MSS entrants to the 2 GHz Band for their pro rata share of certain band-clearing costs (the "Reimbursement Obligation"). Pursuant to the FCC Orders, to the extent that Sprint collects money from an MSS entrant under the Reimbursement Obligation, Sprint is not entitled also to take a band-clearing credit for that amount against its $2.8 Billion True–Up.

In *Sprint Nextel Corporation v. New ICO Satellite Services G.P. and Terrestar Networks, Inc.,* 08 CV 651 (E.D.Va.), Sprint and New Satellite Services are engaged in litigation relating to the Reimbursement Obligation (the "Reimbursement Litigation"). In its complaint in that action, Sprint asserted the right to payment from New Satellite Services for its share of the Reimbursement Obligation.[4] Notably, Sprint did not name the other Debtors as defendants in the Reimbursement Litigation, and did not seek joint and several liability against the Debtors for the Reimbursement Obligation. Sprint claimed that the Debtors were jointly and severally liable under the FCC Orders after New Satellite Services and the Debtors filed for bankruptcy protection on May 15, 2009.

On June 25, 2009, Sprint filed a proof of claim against each of the Debtors in the amount of $211,429,000 (collectively, the "Sprint Claims"), asserting that the Debtors were each jointly and severally liable to Sprint for their alleged $1.9–billion–plus share of the Reimbursement Obligation. The $1.9 billion represented a nineteen-fold increase over the $100 million Sprint sought in its complaint from New Satellite Services in the Reimbursement Litigation.

On July 22, 2009, the Debtors filed an objection to the Sprint Claims to the extent that Sprint asserted them against any Debtor other than New Satellite Services. The Debtors' position was that no joint and several liability existed and that only the actual FCC-license-holding entity (here, New Satellite Services) was potentially [5] liable for the Reimbursement Obligation. The Bankruptcy Court disallowed the Sprint Claims against the Debtors other than New Satellite Services, holding that the referral to the FCC under the doctrine of primary jurisdiction was not required,[6] and that, on the merits of the

3. These orders include Improving Public Safety Communications in the 800 MHz Band; Consolidating 800 and 900 MHz Industrial/Land Transportation and Business Pool Channels, Report and Order, Fifth Report and Order, Fourth Memorandum Opinion and Order, and Order, 19 FCC Rcd 14969 (2004); and Improving Public Safety Communications in the 800 MHz Band, Report and Order and Order and Further Notice of Proposed Rulemaking, WT Docket No. 02–55 and ET Docket Nos. 00–258 and 95–18, FCC 09–49 (2009)

4. Under the FCC Orders, the Reimbursement Obligation only applies if the entity from which Sprint seeks reimbursement entered the 2 GHz Band on or before June 26, 2008. The factual issue of whether New Satellite Services did so is at the heart of the Reimbursement Litigation.

5. The extent to which New Satellite Services is actually liable for its share of the Reimbursement Obligation depends on the outcome of the Reimbursement Litigation.

6. Before the Bankruptcy Court issued the Bankruptcy Order, Sprint filed a motion to

joint-and-several-liability claim, "no basis exists under the facts as they have been presented to impose joint and several liability on the Debtors." (Bankruptcy Order at 18.)

Sprint now presents two main arguments on appeal. First, it asserts that the Bankruptcy Court erred by failing to refer the issue of the Debtors' joint and several liability for the Reimbursement Obligation to the FCC under the doctrine of primary jurisdiction. Second, Sprint argues that even if the Bankruptcy Court was not required to refer the issue to the FCC, it made two errors in its analysis on the merits in finding that no joint and several liability existed. After reviewing the relevant record and the parties' submissions, the Court affirms the Bankruptcy Order for the reasons set forth below.

## II. DISCUSSION

### A. PRIMARY JURISDICTION REFERRAL

■ In a District Court's review of a Bankruptcy Court order denying a motion for a primary jurisdiction referral and disallowing the underlying claims, the Bankruptcy Court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo. *See In re Yohannes*, No. 06 Civ. 461, 2007 WL 2034301, at *2 (S.D.N.Y. July 17, 2007). Further, the Second Circuit has stated that a court's decision to not apply the doctrine of primary jurisdiction is subject to de novo review. *See Ellis v. Tribune Television Co.*, 443 F.3d 71, 83 n. 14 (2d

Cir.2006); *see also National Commc'ns Ass'n, Inc. v. American Tel. & Tel. Co.*, 46 F.3d 220, 222 (2d Cir.1995) (stating that the decision is subject to a "standard of review [that] is essentially de novo."). The parties do not dispute that the reviewing court must independently examine the four considerations described below to determine whether referral is appropriate. Accordingly, the Court will examine the primary jurisdiction issue anew.

"No fixed formula exists for applying the doctrine of primary jurisdiction." *Ellis*, 443 F.3d at 82 (*quoting United States v. West Pac. R.R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956)). Instead, the Second Circuit generally focuses on four grounds in determining whether to apply primary jurisdiction, specifically whether the question at issue: (1) falls within the conventional experience of judges or involves technical or policy considerations within the agency's particular field of expertise; (2) is particularly within the agency's discretion; (3) raises a substantial risk of inconsistent rulings; and (4) has been the subject of a prior application to the agency. *See id.* at 82–83; *National Commc'ns Ass'n*, 46 F.3d at 220–23. In addition to reviewing these four considerations, "[t]he court must also balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." *National Commc'ns Ass'n*, 46 F.3d at 223; *Ellis*, 443 F.3d at 83 (quotation marks omitted).

In reviewing the four grounds and related balancing consideration, the Court is

withdraw the reference under 28 U.S.C. § 157(d), seeking to have the District Court determine whether a primary jurisdiction referral of the joint and several liability issue to the FCC was warranted. The Bankruptcy Court declined, pursuant to Fed. R. Bankr.P. 5011(c), to stay the claims allowance proceedings pending the District Court's deter-

mination of the withdrawal of the reference motion. The District Court, before the Bankruptcy Court issued the Bankruptcy Order, determined that the reference would not be withdrawn. *See Sprint Nextel Corp. v. DBSD North America, Inc.*, 09 Civ. 7109 (Docket No. 3).

mindful that the Second Circuit applies a "narrow" approach to application of the primary jurisdiction doctrine. *Goya Foods, Inc. v. Tropicana Prod., Inc.,* 846 F.2d 848, 851 (2d Cir.1988); *see also Ellis,* 443 F.3d at 91. "[T]he case law establishes that it should not be lightly invoked or applied, and that cases in which its application is warranted tend to be the exception, not the norm." *Global Crossing Bandwith, Inc. v. OLS, Inc.,* No. 05–CV–6423, 2009 WL 763483, at *2 (W.D.N.Y. Mar. 19, 2009).

1. *Whether the Question at Issue Falls Within the Conventional Experience of Judges or Involves Technical or Policy Considerations Within the Agency's Particular Field of Expertise*

▇▇▇ With regard to the first prong, primary jurisdiction referral is appropriate "when the issue involves technical questions of fact uniquely within the expertise and experience of an agency," *Goya Foods,* 846 F.2d at 851 (quotation marks omitted), and does not extend to legal questions that are "within the conventional competence of the courts." *National Commc'ns Ass'n,* 46 F.3d at 223. For substantially the reasons provided by the Bankruptcy Court, the Court finds that the issue of the Debtors' joint and several liability is a legal question squarely within the purview of the judiciary, and not a "technical question[ ] of fact uniquely within the expertise and experience of [the FCC]." *Goya Foods,* 846 F.2d at 851. As the Bankruptcy Court stated, "[t]he issue of joint and several liability does not go to spectrum allocation, the extent to which existing spectrum occupants can be pushed out, or the amount entrants must pay for the right to utilize the [2 GHz Band]." (Bankruptcy Order at 10.)

Instead, the issue is whether existing law (specifically, the FCC Orders) imposed joint and several liability for the Reimbursement Obligation on all of the Debtors, as opposed to merely on New Satellite Services. The Court agrees with the Bankruptcy Court's summary of how this issue falls "within the conventional competence of the courts," *National Commc'ns Ass'n,* 46 F.3d at 223:

> Matters of construction of the language appearing in statutes, regulations and orders are well within the conventional experience of judges. And indeed, construing such language is a routine and commonplace aspect of the jobs we judges do. Deciding questions as to what the FCC previously said; whether that gave rise to claims against various debtors in these chapter 11 cases; and whether other bases in law exist for imposing joint and several liability falls well within the traditional functions of a Bankruptcy Judge.

(Bankruptcy Order at 11.)

Sprint shifts the scope of the issue before this Court when it argues:

> The issues raised by the claims objections filed by the Debtors involve technical and policy issues the analysis of which has been delegated to the FCC. The underlying policy issue implicated by this case is how to pay for the [BAS Relocation] to make way for advanced technologies.... The FCC is entitled to the greatest deference on issues related to its spectrum reallocation policies and the payment of costs associated with the relocation of [BAS Incumbents].

(Sprint Br. at 11 (quotation marks omitted).) The issue decided by the Bankruptcy Court, and now before this Court on de novo review, is not how to pay for BAS Relocation, how to best allocate band spectrum for new technologies, or related communications policy issues. Rather the is-

sue is simply whether the FCC Orders in effect at the time of the Debtors' bankruptcy filings imposed joint and several liability on the Debtors for a portion of the Reimbursement Obligation. Accordingly, the Court concludes that what is presented here is a legal issue within the conventional experience of judges that does not involve technical or policy considerations within the FCC's particular field of expertise. The Court therefore finds that the first factor cuts against referral.

2. *Whether the Question at Issue Is Particularly Within the Agency's Discretion*

■ With regard to the second prong, Sprint argues that holding "MSS systems" or "MSS operators" to be jointly and severally liable for the Reimbursement Obligation is an issue that is within the discretion of the FCC. To support this argument, Sprint asserts that the FCC Orders are at least ambiguous as to whether they provide for liability for the Reimbursement Obligation on MSS systems and operators, as opposed to merely on "MSS licensees" or "MSS entrants." According to Sprint, "the interpretation of the FCC's prior orders to determine what the FCC meant by interchangeably referring to 'MSS licensees,' 'MSS systems,' 'MSS operators,' and 'MSS entrants' is within the FCC's discretion, and the FCC's determination of that issue is entitled to substantial deference." (*Id.* at 14.)

Sprint again conflates the pertinent issue. That the FCC has discretion to assign liability to the Debtors does not mean that the issue of whether the existing FCC Orders have in fact subjected the Debtors to joint and several liability is an issue that is particularly within the FCC's discretion. The relevant issue for the purposes of the second prong here is not whether the FCC has the ability or discretion to enact rules requiring joint and several liability of all

entities that constitute MSS systems or operators. Rather, the pertinent question is whether analyzing the scope of existing FCC Orders on the Debtors' liability is particularly within the FCC's discretion. The Court finds that judging whether an agency has enacted such a rule goes to the heart of the role of a court—to interpret and apply what the law provides—and that function is in no way particularly within the FCC's discretion. As such, the Court concludes that the second consideration militates against referral.

3. *Whether the Question Raises a Substantial Risk of Inconsistent Rulings*

■ The third prong of the Second Circuit's primary jurisdiction test "ensure[s] that courts and agencies with concurrent jurisdiction over a matter do not work at cross-purposes." *Fulton Cogen. Associates v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 97 (2d Cir.1996). Sprint argues that "[o]nce it is recognized that the FCC ... intend[s] to interpret its prior orders, the potential for inconsistent rulings immediately becomes apparent." (Sprint Br. at 14.) Sprint thus asserts that "[i]f the FCC ... reaches a different conclusion and finds that all entities comprising a single 'MSS system' are jointly and severally liable for the [R]eimbursement [O]bligation [under the FCC Orders], subsequent courts will have to reconcile that FCC determination with the Bankruptcy Court's contradictory decision." (*Id.* at 14.)

■ Sprint did not raise this argument to the Bankruptcy Court. Appellate courts will not consider arguments raised for the first time on appeal. *See In re Fayolle*, 159 Fed.Appx. 221, 222 (2d Cir. 2005) ("[W]e hold that plaintiff waived all arguments not presented in the proceeding before the Bankruptcy Court ...."); *Med-*

*forms, Inc. v. Healthcare Mgmt. Solutions, Inc.,* 290 F.3d 98, 109 (2d Cir.2002).

Even if it considered Sprint's argument here, the Court does not foresee a substantial danger of an inconsistent interpretive ruling from the FCC on the scope of the Reimbursement Obligation under the FCC Orders. If the FCC were to address the scope of the liability for affiliated entities, the record suggests that the FCC would do so in the form of rulemaking, which would be presumptively prospective in its application. Based on existing FCC Orders, the Court views it unlikely that such a prospective ruling would be inconsistent for the purposes of primary jurisdiction analysis with the Court's ruling at this time. Accordingly, Sprint has also failed to persuade the Court that the third primary jurisdiction consideration weighs in favor of referral.

### 4. Whether the Question Has Been the Subject of a Prior Application to the Agency

■ A party's late request for referral after substantial judicial proceedings have transpired cuts against referral. *See Global Crossing Bandwith,* 2009 WL 763483, at \*4. The Bankruptcy Court found that Sprint "waited until a very late stage of the Debtors' bankruptcy cases to raise the issue [of] joint and several liability . . . ." (Bankruptcy Order at 14.) The Bankruptcy Court noted that Sprint raised the issue of referral on the joint and several liability issue less than two months before the scheduled confirmation hearing, and that Sprint did so even though it and New Satellite Services were involved in litigation over the Reimbursement Obligation before the Debtors filed for bankruptcy. (*See id.* at 14.) Thus, the Court is persuaded that the fourth consideration additionally weighs against agency referral.

### 5. Balancing Consideration

■ The Court must also balance the advantages of referral against any concomitant potential costs of complication and delay. *See Ellis,* 443 F.3d at 83; *National Commc'ns Ass'n,* 46 F.3d at 223. The Bankruptcy Court found that "the unnumbered factor articulated by the Circuit—balancing the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings—compels rejecting assertions of primary jurisdiction here." (Bankruptcy Order at 14 (quotation marks and alteration omitted).) Sprint asserts, however, that "the possibility of delay is not a legitimate reason to deny a referral request" and that "the Bankruptcy Court's decision was [improperly] driven by its concern that referral would negatively effect [sic] the ongoing administration of the bankruptcy case." (Sprint Br. at 16–17.)

In essence, Sprint contends that the potential economic costs of complication and delay in the Debtors' bankruptcy cases are not relevant grounds in determining whether to refer an issue to an administrative agency. The Court disagrees, especially so in the context, such as presented here, of a complicated bankruptcy proceeding involving many stakeholders relying on an efficient proceeding. For example, both Supreme Court and Second Circuit precedent permit a court to consider delay as a consideration in the equitable analysis connected to a decision on primary jurisdiction referral. *See Reiter v. Cooper,* 507 U.S. 258, 270, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993) (rejecting referral to an agency where the "referral . . . could produce substantial delay . . . ."); *National Commc'ns Ass'n,* 46 F.3d at 225 ("Since the district court can conclude this matter far more expeditiously, a potential delay of even two years more than outweighs any benefit

that might be achieved by having the FCC resolve this relatively simple factual dispute.") *rev'g* No. 93 Civ. 3707, 1994 WL 116083, at *1 (S.D.N.Y. Mar.25, 1994) (referring issue to the FCC).

The Bankruptcy Court made several salient findings of fact, subject to the clearly erroneous standard on appeal, *see In re Yohannes*, 2007 WL 2034301, at *2, balancing the advantages and potential costs of complications and delay. The Bankruptcy Court found that "referring the issue to the FCC for rulemaking would grossly interfere with the bankruptcy process," (Bankruptcy Order at 15), stating:

> [A] referral to the FCC would upset the reasonable expectations of unsecured creditors as to the receipt of their distributions under the Debtors' plan of reorganization. Since the amount of the Sprint Claims is so substantial, if the issue of joint and several liability were referred to the FCC, awaiting the conclusion of the FCC's rulemaking would require the creation of distribution reserves so huge as they would effectively preclude any distribution to unsecured creditors. The Debtors would almost certainly need to wait for a decision on that issue before making any distribution.

(*Id.*) The Bankruptcy Court further found that "it is at least foreseeable, if not also certain, that if I were to await the conclusion of rulemaking in the FCC, determination of the issues now before me would take months or years." (*Id.* at 14.)

The Court does not take lightly the Bankruptcy Court's findings regarding the potential harm of complication and delay here, and Sprint has not shown that the Bankruptcy Court clearly erred in making these findings.[7] Accordingly, the Court finds that equitable grounds such as delay are appropriate considerations in the primary jurisdiction analysis and that the Bankruptcy Court's factual findings regarding the significant potential costs of complications and delay are not clearly erroneous.

## B. *JOINT AND SEVERAL LIABILITY*

Sprint contends that the Bankruptcy Court erred in two ways in its analysis on the merits of the joint and several liability issue. First, Sprint contends that the Bankruptcy Court's interpretation of the FCC Orders ignored basic principles of statutory construction. Second, it asserts error because "[i]t is well within the FCC's authority to hold multiple entities comprising a single MSS system directly liable for the reimbursement obligation." (Sprint Br. at 22.)

In asserting these two errors, Sprint is challenging the Bankruptcy Court's interpretation of FCC regulations. A court's interpretation of an administrative regulation is subject to the rules of statutory construction. *See APWU, AFL–CIO v. Potter*, 343 F.3d 619, 626 (2d Cir. 2003). Matters of statutory interpretation are questions of law subject to de novo review. *See United States v. Santos*, 541 F.3d 63, 67 (2d Cir.2008).

---

**7.** The Court further considers the representations of the Debtors that

> [t]he timing of the Debtors' confirmation process is of critical importance to the Debtors. The unavoidable delay that could result from an FCC referral could seriously jeopardize the Debtors' current financing and quickly force the Debtors to sell at

significant loss the securities that have financed the Debtors' ongoing restructuring. Further given the sheer magnitude of Sprint's claims ($200 million against each of nine debtors), any FCC referral would severely delay distributions to all other unsecured creditors.

(Debtors' Opp. Br. at 20.)

1. *Statutory Construction*

 Sprint argues that the Bankruptcy Court erred in its interpretation of the FCC Orders because its interpretation renders them "nonsensical." (Sprint Br. at 20) The Bankruptcy Court's interpretation, Sprint asserts, leads to a result in which New Satellite Services could not be held liable for the Reimbursement Obligation. Sprint's reasoning is based on the FCC's statement that the Reimbursement Obligation is triggered only when the MSS operator's satellite becomes operational. Because New Satellite Services does not itself own a satellite, Sprint argues, the entire group of affiliated entities involved in providing MSS, the "MSS system," must be held liable for the Reimbursement Obligation. Any other result, Sprint contends, would lead to the "nonsensical" (*id.* at 20) situation in which the Court would have to interpret the FCC Orders to not impose the Reimbursement Obligation on any of the Debtors, including New Satellite Services—a result Sprint argues the FCC Order could not possibly have intended because it would render the Reimbursement Obligation unenforceable for all practical purposes.

Sprint's argument on this point of statutory construction constitutes a new argument on appeal. Sprint did not present this argument to the Bankruptcy Court. Thus, Sprint has waived this argument. *See In re Fayolle*, 159 Fed.Appx. at 222; *Medforms*, 290 F.3d at 109.

 Even if Sprint had presented this argument to the Bankruptcy Court, the Court does not find it persuasive. Sprint has still failed to point to language in the FCC Orders that would subject the Debtors to joint and several liability for the Reimbursement Obligation. Also, the Court could very well read the FCC Orders—without finding them to be "nonsensical"—to contemplate the liability of New Satellite Services, the FCC licensee, once a satellite owned by one of its affiliates becomes operational. Further, even if the Court credited Sprint's logic. Sprint has failed to explain why such an interpretation of the FCC Orders would lead to the entire MSS system being liable, as opposed to merely the FCC licensee and the one related entity which directly owns the satellite that becomes operational.

Accordingly, the Court concludes that the Bankruptcy Court did not err in its statutory construction of the FCC Orders when ruling that those orders did not impose joint and several liability on the Debtors.

2. *The FCC's Ability to Impose Liability on Each of the Debtors*

 Sprint next appears to argue that the Bankruptcy Court erred by not properly weighing the FCC's ability to impose liability on each of the Debtors. First, Sprint failed to present this argument to the Bankruptcy Court, and therefore cannot present it on appeal. *See In re Fayolle*, 159 Fed.Appx. at 222; *Medforms*, 290 F.3d at 109. Second, even if Sprint had preserved this argument, whether the FCC is authorized to impose such liability is a distinct issue from the pertinent issue of whether the current FCC regulations have in fact imposed such liability. The relevant issue is whether the FCC Orders imposed joint and several liability on the Debtors—not whether the FCC had the authority to impose such liability or whether future FCC orders could do so. In fact, the Debtors explicitly acknowledge that the FCC has the power to promulgate regulations subjecting the Debtors to joint and several liability for costs relating to the BAS Relocation. Thus, the Court concludes that Sprint's argument that the FCC could adopt joint and several liability is of no import here,

and assigns no error to the Bankruptcy Court for purportedly failing to provide this fact its due.

## III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the Order of the United States Bankruptcy Court for the Southern District of New York dated September 30, 2009, is AFFIRMED and the appeal of Appellant Sprint Nextel Corporation in this action (Docket No. 1) is DENIED.

The Clerk of Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**