POOLER, Circuit Judge,
concurring in part, dissenting in part.
I join Judge Lynch’s thoughtful opinion affirming the Bankruptcy Court’s and District Court’s orders concerning the appeal of DISH Network Corporation (“DISH”). I, however, respectfully dissent from the portion of the opinion granting appellate standing to Sprint Nextel Corporation (“Sprint”).
The question before us is whether Sprint, an out-of-the-money unsecured creditor with an unliquidated claim, has standing to challenge a Chapter 11 confirmation plan (the “Plan”) approved by all the creditors save the two who are before us, and affirmed by the bankruptcy and district courts below. See DBSD II, 421 B.R. 133 (Bankr.S.D.N.Y.2009); DBSD III, No. 09-civ-10156 (LAK), 2010 WL 1223109 (S.D.N.Y. Mar. 24, 2010). On appeal, Sprint raises only one argument: that a provision of the Plan allowing for a “gift” from the senior noteholders to the existing stockholder violates the absolute priority rule.
BACKGROUND
Sprint brings before this Court a claim initially brought against debtor New Satellite Services (“New Satellite”). New Satellite is one of the debtors that joined together to form a business still in the developmental stage, for the purpose of providing mobile satellite services. DBSD, North America, Inc. (“DBSD”), the lead debtor, is a holding company and the direct or indirect corporate parent of the other debtors, including New Satellite. See DBSD IV, 427 B.R. 245, 249 (S.D.N.Y. 2010). Sprint’s complaint against New Satellite initially sought to recoup the costs of Sprint’s relocation to a 2-gigahertz spectrum band (“2 GHz band”). Sprint alleged New Satellite owed Sprint its pro rata share of band clearing costs. Significantly, Sprint did not name the other debtors as defendants in its complaint, nor did it seek to hold the debtors jointly and severally liable for the reimbursement obligation. See DBSD TV, 427 B.R. at 249. This changed after the debtors, including New Satellite, filed for bankruptcy. Shortly thereafter, Sprint filed nine identical proofs of claim in the Chapter 11 cases *109 against each of the nine debtors, claiming that they were jointly and severally liable to Sprint for the full claim amount of at least $1.9 billion. See id. The $1.9 billion represented a nineteen-fold increase over the $100 million Sprint had initially sought in its complaint against New Satellite. See id. The bankruptcy court rejected Sprint’s claim of joint and several liability, and the district court affirmed this order on appeal. See id. at 254-55.
Before rejecting Sprint’s claim of joint and several liability, the bankruptcy court temporarily allowed Sprint’s claim for voting purposes only in the amount of $2 million. In re DBSD North America, Inc., Case No. 09-13061(REG) (Sept. 11, 2009); see also DBSD I, 419 B.R. 179, 203-04 (S.D.N.Y.2009). The bankruptcy court tentatively reached this decision, given that Sprint had not — and still has not— provided any documentation of the expenditures it claims it is owed. The bankruptcy court also noted that the 2 GHz band that Sprint acquired is so valuable that Sprint must make an anti-windfall payment to the United States Treasury in the amount of $2.8 billion. In re DBSD North America, Inc., Case No. 09-13061(REG) (Sept. 30, 2009). Moreover, the relocation agreement provided that Sprint could deduct any unrecouped band-clearing costs from the $2.8 billion anti-windfall payment; it appeared to the court that Sprint had not taken its ability to offset into account when calculating its damages. Id. Thus, there is a very real possibility that Sprint’s as-of-yet-undetermined relocation costs may be paid for in full without necessitating any recourse to DBSD. The bankruptcy court emphasized that Sprint’s $2 million claim was temporarily allowed “for voting purposes (and those alone).” Id. (emphasis added).
Twenty-four classes of claims ultimately voted in favor of the confirmation plan. Sprint and DISH were the only two creditors to object. Because DISH’s votes were designated, Sprint — holding a contingent, disputed, and unliquidated claim— singlehandedly prevented the confirmation of a Plan that would have resulted in a reorganized entity worth between an undisputed $ 492 million to $692 million. DBSD I, 419 B.R. at 200.
DISCUSSION
The preliminary issue raised on appeal is whether Sprint has standing before this Court. If so, then the merits of its sole claim on appeal must be addressed— whether a gift from the senior noteholders to the existing stockholder and unsecured creditors, including Sprint, violates the absolute priority rule. Because I do not believe that Sprint has standing, I do not reach the merits of Sprint’s challenge.
Standing is raised for the first time before this Court, as Sprint had standing below based on its challenge to the bankruptcy court’s valuation of the estate. Sprint abandoned its position contesting the bankruptcy court’s valuation on appeal, thus raising the question of whether an out-of-the-money, unsecured creditor with an unliquidated claim has standing.[1]
The claims initially allowed in a bankruptcy proceeding are broad under the language of 11 U.S.C. § 101(4), and it is well-settled within our Circuit that the definition of such a claim “is to have wide scope.” In re Chateaugay Corp., 944 F.2d 997, 1002-03 (2d Cir.1991). Our Circuit *110 has, however, purposely and periodically restricted appellate standing in bankruptcy proceedings. See In re Gucci, 126 F.3d 380, 388 (2d Cir.1997) (explaining that “[t]he stringency of our rule is rooted in a concern that freely granting open-ended appeals to those persons affected by bankruptcy court orders will sound the death knell of the orderly disposition of bankruptcy matters”). Accordingly, the equally well-settled rule concerning appellate standing is that merely being a party to a bankruptcy proceeding does not confer appellate standing to challenge the confirmation of a reorganization plan. See In re Cosmopolitan Aviation Corp., 763 F.2d 507, 513 (2d Cir.1985), abrogated on other grounds by Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P’ship, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Although creditors generally have standing to challenge orders that affect estate property, see Kane v. Johns-Manville Corp., 843 F.2d 636, 642 (2d Cir.1988), “[t]his general rule is based upon the assumption that ‘that sort of order directly affects the funds available to meet their claims.’ ” In re Ashford Hotels, Ltd., 235 B.R. 734, 738 (S.D.N.Y.1999) (quoting In re Gucci, 126 F.3d at 388). Where an order has no effect on the funds available to meet a creditor’s claims — where the creditor is not “directly and adversely affected pecuniarily by the challenged order” — then appellate standing is lacking. Int’l Trade Admin. v. Rensselaer Polytechnic Inst., 936 F.2d 744, 747 (2d Cir. 1991) (internal quotation marks omitted). Thus, notwithstanding the opinion issued today, courts within our jurisdiction have analyzed the “aggrieved person” standard sufficient to confer standing, by looking to whether the appellant at issue would receive any money under the Plan, or under the valuation of the estate. See Freeman v. Journal Register Co., No. 09 Civ. 7296, 2010 WL 768942, at *3 (S.D.N.Y. Mar.8, 2010); In re Taylor, No. 00 Civ. 5021, 2000 WL 1634371, at *2 (S.D.N.Y Oct.30, 2000); Bartel v. Bar Harbor Airways, Inc., 196 B.R. 268, 271-72 (S.D.NY.1996); see also In re Ashford Hotels, 235 B.R. at 738.
The situation before us, however, includes an additional wrinkle not addressed by today’s opinion: Sprint is not merely an out-of-the-money unsecured creditor, but its alleged direct and adverse pecuniary effect is based entirely on an unliquidated claim. That is, not only does Sprint get nothing under the Plan as an unsecured creditor, but as of today, Sprint has failed to demonstrate it is entitled to a single cent from DBSD, much less $2 million.
Sprint’s argument that it has standing to appeal the confirmation order because it “might do better still under alternative plans” thus remains entirely speculative. Despite the indisputably weak foundation of Sprint’s request, I address its misguided reliance on Kane, which Sprint interprets to mean that showing one “might” do better under an alternative plan is all that is required for standing. Sprint and the Court both misinterpret Kane. First, Kane reiterated the rule that standing in a bankruptcy appeal requires a showing of direct and adverse pecuniary effect. 843 F.2d at 641 (quoting Cosmopolitan Aviation, 763 F.2d at 513). Second, Kane did not disturb the general rule that a showing of pecuniary injury requires more than mere speculation that a party might have been better off with alternatives that could have been pursued. See In re Joint E. and S. Dist. Asbestos Litig., 78 F.3d 764, 779 (2d Cir.1996). Third, the plaintiff in Kane was not in line behind undersecured senior creditors. In Kane, there was “a sum well in excess of $600 million” set aside to satisfy the unsecured claims of asbestos victims. See In re Johns-Manville Corp., 66 B.R. 517, 528 (1986). Thus, it was not mere speculation in Kane that *111 the plaintiff could have done better under alternative plans because it was undisputed that the plaintiff was entitled to something. Here, in stark contrast, senior creditors are unsecured by over $100 million and Sprint has been unable to demonstrate it is owed anything.
While it may be true that our Court should not bar all appeals from out-of-the money unsecured creditors, I, respectfully, cannot join an opinion that characterizes Sprint as a run-of-the-mill, out-of-the-money, unsecured creditor who has been “pecuniarily affected.” The opinion does not adequately address the facts before the Court, nor a possibility inherent in today’s ruling, that a creditor with a claim as tangential as Sprint’s may succeed in preventing the reorganization of an entity that may ultimately owe it nothing.
I decline to decide on the facts of this case whether an out-of-the-money creditor must take an appeal from a valuation decision to have standing. Indeed, I find it is less significant that Sprint failed to pursue its challenge to the bankruptcy court’s factual findings regarding the estate’s valuation, than that it failed to prove it is owed any amount of money in the first instance. In this regard Sprint is more akin to the creditors in In re Ashford, 235 B.R. 734, than the Court acknowledges, distinguishing that case on the basis that the Ashford court “never accepted the appellants’ attempts to characterize themselves as creditors.” While In re Ashford specifically involved a party whose interest in the bankruptcy proceeding was that of a potential defendant to another lawsuit, Sprint’s situation is nevertheless analogous in that it has similarly been unable to demonstrate an affirmative interest in the bankruptcy proceeding. Moreover, In re Ashford firmly supports the proposition that “the Second Circuit has made it clear that the parties who should be able to appeal Bankruptcy Court Orders are limited.” 235 B.R. at 739 (citing Kane, 843 F.2d at 642).
Insofar as the Court characterizes the above discussion as addressing “the ultimate merits of Sprint’s claim,” the Court misunderstands the purpose of such a discussion. The question before us is whether Sprint has standing — that is, whether Sprint has been “directly and adversely affected pecuniarily by the challenged order,” Rensselaer, 936 at 747. The answer requires identifying the nexus between Sprint and the bankruptcy proceeding in the first instance, as it is a task of Herculean proportions to find that a pecuniary interest has been adversely affected where no loss has been identified, and no connection to the bankruptcy proceeding established. The silence on this issue is, as the Court indicates, telling — yet it is more a testament to the oddity of the claim before us, than to the propriety of the standing analysis.
While the Court relies heavily on the fact that the parties did not brief the issue in the specific context of standing, our decision is based on the facts provided by the parties themselves. And just as the Court relies on the bankruptcy court’s emphatically temporary allowance of Sprint’s claim in its decision, I rely on the facts set forth by both parties, as found by two different courts below us, which neither party claims were clearly erroneous. In re Baker, 604 F.3d 727, 729 (2d Cir.2010). Indeed, I find it difficult to agree with a rule which disregards the very genesis of the claim upon which Sprint stands before us now, in determining how, and to what extent, its interests are directly and pecuniarily affected.
Under no reasonable understanding of Sprint’s claim can it show that it suffered a pecuniary injury as a result of the confirmation plan. Accordingly, Sprint should *112 not have standing before this Court. For these reasons, I respectfully dissent.

. The Court’s distinction between the levels of generality at which Sprint's standing can be considered, is largely academic: if we hold Sprint has no standing to appeal based on the lack of direct and adverse pecuniary effect, there is no standing to appeal either the Plan generally, or one provision of the Plan in particular.